JAMES D. TURNBULL v. J. WIGHT GIDDINGS, PRESIDENT,
AND DENNIS E. ALWARD, SECRETARY, OF THE SENATE,
AND THOMAS E. BARKWORTH v. WILLIAM A.
TATEUM, SPEAKER, AND LEWIS M.
MILLER, CLERK, OF THE HOUSE
OF REPRESETATIVES.

[Two cases.]

*Mandamus—Legislative journals—Protests of members.*

1. A writ of *mandamus* will. not issue unless it clearly appears
that the person to whom it is directed has the absolute power
to execute it.

2. The duty of keeping a journal is by the Constitution imposed
upon the Senate and House of Representatives, and not upon
the president and secretary of the Senate and the speaker and
clerk of the House.

3. The duty of keeping the journal, imposed by the rules upon the
secretary and clerk, is not a delegation of the control of the
journal to either of them, and they can only enter upon it
such matter as the Senate and House determine shall be placed
thereon.

4. The duty of receiving the dissent of a member from and pro-
test against any act, proceeding, or resolution which he may
deem injurious to any person or the public, and of entering
the reason of such dissent upon the journal, under section 10,
art. 4, of the Constitution, is imposed upon the Senate and
House of Representatives, and, if these bodies refuse to per-
form such duty, neither the president of the Senate nor the
speaker of the House has the power, without the concurrence
of the body over which he presides, to execute a writ of
*mandamus* requiring such dissent and protest to be received
and reason entered.

*Mandamus.* Argued April 4 and 5, 1893. Denied April
14, 1893.

Relators applied for *mandamus* to compel respondents to
receive certain protests, and enter the same on the journals

of their respective bodies. The facts are stated in the opinion.

*A. A. Ellis,* Attorney General, and *T. E. Barkworth,* for relators.

*Thomas M. Cooley,* for respondents.

McGRATH, J. These cases may be considered together. The relator in the first case is a member of the Senate. Respondent Giddings is Lieutenant Governor and *ex officio* president of the Senate, and respondent Alward is the secretary of the Senate. The relator in the other case is a member of the House of Representatives. Respondent Tateum is also a member of the House and speaker thereof, and respondent Miller is clerk of that body. Senator Turnbull, on the 15th day of February, 1893, asked leave to present a protest against certain proceedings of the Senate, and to have the same spread upon the journal; but the president of the Senate, respondent Giddings, ruled that the protest offered was out of order, as reflecting on the honor of the Senate. The decision of the president was appealed from on the ground that the ruling was "contrary to the constitutional guaranty." Upon vote taken, the ruling of the president was sustained.

On February 9, 1893, during a session of the House of Representatives, the relator in the second case, Representative Barkworth, presented his protest against the passage of a certain resolution; but the speaker, respondent Tateum, declared the protest to be out of order, as reflecting on the House, and refused to receive the same or print it in the journal. Mr. Barkworth appealed from the decision of the speaker on the ground that the ruling was "contrary to the constitutional guaranty." Upon a vote had by yeas and nays, the decision of the speaker was sustained.

On the 3d day of March following, Mr. Barkworth reoffered his protest, but the speaker repeated his ruling, and the same was not received; and thereupon Mr. Barkworth requested respondent Miller to receive said protest, and print the same as a part of the journal, but said Miller, "relying upon the decision of the said speaker of the House, refused and neglected to receive the protest."

Orders to show cause were issued, and respondents appear without answer, and move to dismiss the proceedings.

The motion to dismiss must be granted. Section 10, art. 4, of the Constitution, provides that—

"Each house shall keep a journal of its proceedings, and publish the same, except such parts as 'may require secrecy. The yeas and nays of the members of either house, on any question, shall be entered on the journal at the request of one-fifth of the members elected. Any member of ether house may dissent from and protest against any act, proceeding, or resolution which he may deem injurious to any person or the public, and have the reason of his dissent entered on the journal."

It will be observed that the Constitution imposes the duty of keeping the journal upon the house, and not upon president or speaker, secretary or clerk. In both cases an appeal to the house was taken, and each house adopted the ruling of its presiding officer, refusing to receive the protest, or to print it in the journal. It is true that the rules make it the duty of the secretary and clerk to keep the journal, but this is not a delegation of the control of the journal to either officer. The rules also provide for the reading of each day's journal, and the correction thereof. The corrections are made at the instance and direction of the body to which the journal is read. The duty imposed by the rules is the mere clerical duty of placing upon the journal such matter as each house may determine shall be

placed thereon. The secretary and clerk are therefore the mere creatures of the respective bodies.

It is not sought by this proceeding to reach something which is in the possession of the agent, who defends his possession by setting up title in his principal, nor is it a proceeding to restrain an agent from doing an unlawful act under an order from his principal, and who sets up the immunity of his superior. It is not the existence in another of mere interest that is here pleaded. It is affirmative action that is sought to be enforced, and it is want of power to comply with or give effect to an order, if made, that is pleaded. It is sought to compel persons, whose duties are purely clerical to perform duties which are imposed upon their superiors. We are asked to compel the secretary of the Senate and clerk of the House to insert in the journals matter which the Senate and House have not only refused to allow to be printed therein, but have refused to consider or receive.

The writ of *mandamus* neither creates nor confers authority upon the officer to whom it is directed. It merely directs the exercise of existing powers. It should be directed to those who are to execute it, or whose duty it is to do the thing required. It must also clearly appear that the person to whom it is directed has the absolute power to execute it; otherwise, it will not be issued. Mos. Mand. 199; High, Extr. Rem. § 32; Merrill, Mand. §§ 57, 58, 60, and cases cited.

The duty sought to be enforced is imposed by the Constitution upon the Senate and House, and, those bodies having refused to receive or enter the protests, neither the president of the Senate nor the speaker of the House has the power, without the concurrence of the body over which he presides, to execute the order- if made.

It is unnecessary to discuss the other questions raised.

Inasmuch as the proper parties are not before the Court,

the proceedings must be dismissed, and the writs denied, but without costs.

The other Justices concurred.