In the Matter of the Last Will and Testament of WILLIAM LOVE, Deceased.

(Filed 20 December, 1923.)

**1. Wills—Revocation—Cancellations—Alterations—Statutes.**

In order to a revocation of a will, in whole or in part, under the provisions of C. S., sec. 4133, there must not only exist the intent of the testator to cancel, but it must be accompanied by the physical act of cancellation; and while it is not required that the words should be entirely effaced where the cancellation is in part, so as to make the same illegible, the portion erased must be of such significance as to effect a material alteration in the meaning of the will or the clause of the will that is challenged on the issue.

**2. Same.**

Where the primary or controlling clause of a will remains unaltered by the obliteration by the testator of words therein, and the unobliterated words remaining are sufficient to carry the designated property to the devisee, it will not amount to a revocation within the intent and meaning of C. S., sec. 4133; nor will the obliteration of the name of another beneficiary be sufficient as to him, when it appears that the intent of the revocation by the testator was dependent upon the successful revocation of a principal 'devise wherein the erasures were insufficient to effectuate a legal cancellation.

ISSUE of *devisavit vel non* as to the last will and testament of William Love, deceased, tried before *Harding, J.,* at August Term, 1922, of GUILFORD.

The will having been proved in common form, at the instance of E. E. Bain, one of the executors duly named therein, a caveat was entered by E. C. Love and other children of the testator to the effect that the second item of paper-writing constitutes no part of said last will and testament, same having been canceled or revoked by the testator in his lifetime; and on citation made, the matter was transferred

to the docket of the Superior Court where it was submitted to the jury, as stated, on an issue in form as follows:

"1. Is the paper-writing propounded the last will and testament of William Love, deceased, or any part thereof, and if so, what part?" And to said issue the jury made answer: "Yes, all except article two (2)."

On the trial it was proved that William Love died in Morganton, N. C., on 1 December, 1921, domiciled in the county of Guilford, and leaving a large estate of real and personal property devised and bequeathed chiefly to his children—Annie E. Bain, wife of E. E. Bain; E. C. Love, W. H. Love, J. A. Love, Mrs. Sallie Love Bass, and Lelia Pitts, a grandchild. That said will was duly signed and witnessed and complete in form on 29 March, 1917, and when same was propounded for probate in February, 1922, the second item of said will, the validity of which is challenged by the caveat, contained the erasure of certain words in said item by having short ink marks drawn across face of these words, and also the same or some of them seem to have been blurred to some extent as if they had been rubbed over with a finger end. Whether at the time of the cancellation or at some other time does not clearly appear, but neither of these erasures or attempted erasures were such as to render the words illegible, and the said item as it then appeared was in form as follows, the words of the items affected by said erasures being in italics:

"Second: I will and devise unto my *daughter, Annie* E. Bain, wife of E. E. Bain, my *entire factory* site, with all improvements thereon, located on the west side of and adjacent to South Ashe Street, and just south of and adjacent to the North Carolina Railroad Company right of way; subject to and charged, however, with the payment of seven thousand dollars ($7,000) payable to my son, E. C. Love, and with the further sum of *seventeen hundred and fifty dollars* ($1,750), payable to my son, *J. A. Love.* In the event that my said daughter, wife of E. E. Bain, shall fail to pay unto said E. C. Love the seven thousand dollars ($7,000) hereinbefore charged on said property, in his favor, and the further sum of seventeen hundred and fifty dollars ($1,750) hereinbefore charged on said land and property, in favor of and payable to *J. A. Love,* then my executors hereinafter named shall sell said property, and out of the proceeds thereof pay unto said E. C. Love the principal sum of seven thousand dollars *($7,000),* and unto *J. A. Love* the sum of seventeen hundred and fifty dollars *($1,750),* and the balance of said proceeds shall go and be the property of my said daughter, wife of E. E. Bain. The said two sums above charged on said land, one payable to E. C. Love and the other to *J. A. Love,* shall commence to bear interest after sixty days after my death, and shall bear interest

at the rate of six per cent per annum till paid; and the power of sale vested in my said executors shall be exercised unless my said daughter, wife of E. E. Bain, shall pay said charges and interest, as hereinbefore provided, within twelve months after my death."

There was evidence tending to show that from the time the will was written and executed until June, 1920, it was in a sealed envelope in the office of one of testator's sons, E. C. Love, and in June, 1920, testator obtained possession of the will and kept it until January, 1921. That he then handed it to the propounder, E. E. Bain, in a sealed envelope, which was not opened till after the testator's death, when it was found in its present condition. That about the time the will was obtained from his son, E. C. Love, and before that, testator, who had been an alert and capable business man, became affected with a condition supposed to be senile dementia, which caused at times aberration of mind more or less protracted; that this condition grew upon him until he became unmanageable, and he was treated at two or more institutions for his disorder, and was in one of them at Morganton at the time of his death.

It was further shown that while he had control of his will, in 1920, he was heard to say to one or more persons, and in reference to this item in question, that the factory property had enhanced in value to such an extent that the disposition he had made of it would work an injustice, and he intended to change it in that respect, and again that he had changed it, etc.

On the verdict, as heretofore stated, there was judgment for caveators, and propounders, having duly excepted, appealed.

*King, Sapp & King* and *Brooks, Hines & Smith* for propounders.
*Bynum, Hobgood & Alderman, Wilson & Frazier,* and *Hoyle & Harrison* for caveators.

Hoke, J.  Our statute on the subject, C. S., sec. 4133, provides in effect that no will or testament in writing, or *any clause thereof,* shall be revoked, except by burning, cancelling, tearing or obliterating the same, by the testator himself, or in his presence and by his direction and consent, or by a formal will with witnesses or a holograph will, duly executed as the statute requires and prescribes.

In construing this statute, it is held with us that in any of the modes specified there may be a partial revocation of the will. *In re Will of Saunders,* 177 N. C., 156; *Baker v. Edge,* 174 N. C., 100; *Barfield v. Carr,* 169 N. C., 574; *In re Wellborn's Will,* 165 N. C., 636; *Cutler v. Cutler,* 130 N. C., 1.  And that in order to a revocation by burning, cancelling, etc., there must be the physical act effecting an erasure or

destruction of some material portion of the will, and this must have been done with intent to revoke. Both the physical act and the intent must concur to an effective revocation. If a testator accidentally drops his will, duly executed, into the fire and it is burned in whole or in part, or though he may have a settled purpose to revoke and has expressed this purpose to others, if there is a failure in the physical act required to carry out his purpose, there is no revocation.

And in case of an alleged revocation by cancelling, while it is not required that the words should be effaced so as to make the same illegible, the portion erased must be of such significance as to effect a material alteration in the meaning of the will or the clause of the same that is challenged on the issue. *In re Shelton's Will,* 143 N. C., 218; *White v. Casten,* 46 N. C., 197; *Hise v. Fincher,* 32 N. C., 139; *Bethell v. Moore,* 19 N. C., 311; *Evans' appeal,* 58 Pa. Rep., 238; *Wolf v. Bolliner,* 62 Ill., 368; *Clark & Perry v. Smith,* 34 Barbour's Reports, 140; *Martins v. Gardiner,* 8 Sim., 72; 59 English Reports, 29; 1st Jarman on Wills, 291-92-93-94; Underhill on Wills, sec. 229.

In *Shelton's case, supra,* it was held that a cancellation or erasure made after the execution of a will, which does not in fact destroy some material portion of the substance of the will, does not constitute a revocation thereof. In *White v. Casten,* that revocation of a will is an act of the mind, demonstrated by some outward and visible sign. And in *Cutler v. Cutler* it is said in the opinion: "That revocation consists of two things—the intention of the testator and some outward act or symbol of destruction. A defacement, obliteration or destruction without the *animo revocandi* is not sufficient, neither is the intention, the *animo revocandi,* sufficient without some act of obliteration or destruction done." And coming more directly to the question presented, it was held in *Clark & Perry v. Smith, supra:* "The intention of a testator to cancel or revoke a clause in his will, however strongly declared, is of no consequence unless it be carried out by some act amounting, in judgment of law, to an actual cancellation or revocation." "A testator having an only son, James W. Smith, devised certain real estate to his 'son, James W. Smith.' After the execution of the will he, with a pen, erased from the clauses of the will containing the devise the name, 'James W. Smith,' leaving the word 'son' uncanceled: *Held,* that neither the will nor the devises to James W. Smith were revoked by the erasures."

And in *Martins v. Gardiner, supra,* where the name of the legatee had been erased in certain places, leaving it in others, "That as the description and in some places the name of the legatee remained uncanceled the Court would not be warranted in holding that the bequest

to her was revoked." A case that is quoted with approval by Mr. Jarman in his valuable work on Wills, at p. 293.

On a proper application of these authorities and the principles they approve and illustrate, the Court is of opinion that there has been no revocation of this will or any part of the same, for the want of any physical act effecting a material alteration in its meaning. Leaving out the words that are obliterated, and accepting the position that the erasures were made with intent to revoke, the primary and controlling clause in this item of the will remains unaltered and is sufficient to carry the designated property to the devisee as originally written.

True, in the portion of the will descriptive of the devisee, the words "Annie E." and possibly "my daughter, Annie E.," are erased, but the words "wife of E. E. Bain" remain, fully designating the beneficiary. And as to the property, while the words "entire factory" are erased, the words "my site" remain, followed by a full and sufficient description of the property by metes and bounds. The significance of the devise, therefore, stands unimpeached. Whether this failure on the part of the testator to carry out his expressed purpose arose from an attack of unconsciousness, to which he was at times subject, or from an infirmity of purpose incident to his disease that was then upon him, or otherwise, he has failed to signify his intent by any adequate physical act, and it must be held that on the evidence, if accepted by the jury, there has been no revocation of this will or any part thereof.

We are not unmindful of the subsequent erasures, in which the name of one of the beneficiaries, J. A. Love, is marked out wherever the same appears, but this is manifestly dependent, and intended to be, on the successful revocation of the principal devise to the daughter, on which it is made a charge, and this attempt having failed for the reasons stated, the attempted revocation as to this legatee fails also. Several of the authorities above cited and others are in general support of this position, and no claim to the contrary is insisted on before us. See *Bethell v. Moore, supra; Wolf v. Bolliner,* 62 Ill., *supra;* 1st Jarman on Wills, 294.

On the record the judge should have charged the jury, as requested, that there were no facts in evidence permitting an inference of revocation, and this will be certified that the verdict of the jury be set aside and further proceedings had in accord with this opinion.

Reversed.