RADEL CONCRETE PRODUCTS, INC., APPELLANT, *v.* THE CLERMONT COUNTY BOARD OF HEALTH ET AL., APPELLEES.

(No. 249—Decided June 10, 1957.)

Mr. *Ambrose H. Lindhorst* and Messrs. *Ely, White & Davidson,* for appellant.

Mr. *Ray Bradford* and Mr. *Ralph Hill,* for appellees.

*Per Curiam.* In the petition, the plaintiff alleges that on or about December 19, 1955, J. Mark Radel and Cecelia R. Radel purchased 33.25 acres of land situate in Miami Township, Clermont County, Ohio, upon which a dump had been operated for many years, and that, shortly thereafter, the plaintiff leased the land and continued to operate the dump for about six months when it converted the dump into a modern land-fill garbage disposal plant which it operated according to law and the rules and regulation of the Board of Health of Clermont County, Ohio. This was followed by allegations that the land fill was free of vermin and insects, that all garbage dumped there was covered by earth in accordance with the approved method of land-fill garbage disposal plants, and that its operation was conducted under the supervision of the Sanitarian of the Clermont County Board of Health. These allegations were followed by the allegation that on August 27, 1956, the plaintiff filed an application with the board of health for a permit to operate a sanitary disposal plant for garbage by the land-fill method. On August 29, 1956, this application was denied, and on or about September 5, 1956, it was notified that it must close its plant within 24 hours.

The plaintiff alleged that the action of the board of health was arbitrary and contrary to its former ruling and would work irreparable damage on it.

The plaintiff named as defendants the Clermont County Board of Health, all its members, its secretary and chief health commissioner and its sanitarian, all in their official capacities; and as against them prayed "that a writ of mandamus be issued * * * requiring them to issue a permit to the plaintiff to operate a garbage disposal plant by means of the sanitary land fill method." The plaintiff also prayed for a temporary and permanent injunction against any interference by the defendants with it in the operation of "said sanitary land fill garbage disposal plant."

By answer, the defendants, the Clermont County Board of

Health and its members, admitted that plaintiff became a lessee of the premises as alleged, that the plaintiff applied to it for a permit, and that the application was denied as alleged. They specifically denied that the plaintiff had operated a modern land-fill disposal plant on the premises as alleged, denied that vermin and insects had been eliminated, that the garbage dumped there had been covered as required by the approved method for operating a land-fill garbage disposal plant and that this had been done under the supervision of their sanitarian. These specific denials were followed by a general denial which added nothing to the issues.

Defendants filed a cross-petition in which they sought an abatement of the dump as a public nuisance and an injunction against its operation.

The health commissioner and the sanitarian filed answers joining issue with the plaintiff on the allegations of the petition against them, and the plaintiff traversed the allegations of the defendants' cross-petition.

Many witnesses (23 by count), including the health commissioner and the sanitarian, testified. A reading of the bill of exceptions is sufficient to disclose that the evidence was conflicting.

It appears that the plaintiff operated this garbage and waste disposal plant without a permit for about six months, and that it endeavored to satisfy the board of health that it was being operated in a sanitary manner, so that the board would therefore issue a permit for its continuance. During that six month's period, employees of the board of health visited the premises. What was said by them is somewhat in dispute, but at the trial they testified that the disposal plant as operated by the plaintiff was not sanitary. It seems that the principal objection was that the plaintiff did not properly cover the garbage with soil, leaving some uncovered, and some so thinly covered that parts would be exposed.

It is clear from the testimony of the health commissioner and the sanitarian that the plaintiff's disposal plant was not operated to their satisfaction. They did not supervise its operation. The refusal to issue a permit manifestly was based on their conclusions.

As the result of this trial, the court entered a judgment

"that the writ of mandamus and the permanent injunction prayed for in the petition in this case are hereby denied." The temporary restraining order that had been previously granted was dissolved and the defendants' cross-petition for an injunction dismissed.

Perhaps it would be helpful to consider the nature of this action. It will be observed from the caption of the petition that Radel Concrete Products, Inc., is described as plaintiff and not as relator, and that the state of Ohio does not appear in the caption. However, as already observed, the primary relief sought is a writ of mandamus, which could only be granted on the petition of the state of Ohio. In examining the papers, we find that the primary relief sought as shown by the endorsement on the summons was that of mandamus.

It is, therefore, manifest that the record contains contradictory indicia as to whether this is a civil action for a mandatory injunction, or a special proceeding for the extraordinary writ of mandamus. In this situation, the inherent relief possible under the pleadings and evidence should control; neither the caption nor the prayer being a part of the petition for the purpose of determining the cause of action. The caption could be amended to show that the action was by the state on relation of Radel, Inc.

It will be observed that the action is against the defendants in their official capacity. The board of health, according to the allegations of the petition, arbitrarily refuses to issue a permit to the plaintiff and has ordered it to cease the operation which it had thus refused to authorize. This is all that is charged against the members of the board of health. The other defendants are officers or employees of the board of health and the things alleged against them are acts of investigation concerning health conditions and no trespass or other invasion of the plaintiff's rights are charged against them. All that is charged against them is that they are executing the orders of the board of health, and that was and is their duty, unless the duties were nondelegable, which clearly cannot be successfully maintained.

The most relief which the allegations would justify would be the issuance of a writ of mandamus requiring the board of health to issue to the plaintiff a permit to operate this disposal

plant, as now operated, and not interfere with it so long as that method of disposal is maintained. But that would be official action, which the plaintiff is seeking to control.

The law has confided the execution of the health laws to the board of health and expressly authorizes it to appoint a health commissioner and other assistants, as it might deem necessary or expedient. Section 3709.11, Revised Code. In the protection of health and the elimination of insanitary conditions, the board of health and its employees are performing their statutory duty, and so long as they are pursuing those objectives they are not amenable to any court. It is only when these objectives are abandoned that they become personally answerable, and the person who asserts such abandonment has the burden of proving his assertion. When their action is challenged by an action for a writ of mandamus, the burden devolves upon the challenger to point out "a duty specially enjoined by law" and its disregard. If the duty depends upon the existence of a certain situation, it devolves upon the board of health to determine whether the situation exists, and, when the evidence is conflicting, to weigh and reach a decision; and in the absence of a clear abuse of discretion, a court will not disturb its decision.

We find that is the situation shown by this record. The plaintiff applied for a permit to the board of health to continue to operate the garbage disposal plant. It refused to issue the permit. There can be no question that reasonable minds could differ as to whether the proof showed that the plaintiff was operating the land-fill garbage disposal plant as required. Merely calling it a land-fill garbage disposal plant is not significant. The method of operation is the decisive factor. Of course the collection and disposal of garbage is a lawful business, but garbage is a potential and imminent nuisance, and its total destruction may be ordered.

The evidence was conflicting as to the existence of vermin and odors. It was more in conflict as to whether the garbage was being covered by enough soil, and whether any garbage remained exposed or so close to the surface that exposure was easy. In this situation, we cannot say that the board of health abused its discretion. This requires us to deny the writ of man-

damus. In an action for injunction only the same reason would require a denial of relief.

There was introduced in evidence a copy of the regulations adopted by the Clermont County General Health District, and it is asserted that provisions similar to some of these regulations were held to be involved in *Weber* v. *Board of Health of Butler County,* 148 Ohio St., 389, 74 N. E. (2d), 331. That was not an action for a permit, but was an action for a declaratory judgment by the owner or controller of a farm in Butler County, upon which he raised hogs for the Cincinnati market. He had fed his hogs garbage collected in Cincinnati for about 8 years and transported it in trucks therefrom to his farm. In that declaratory judgment action, the court was called upon to pass upon the validity of all the rules and regulations and laws relating to garbage disposal, promulgated by the Butler County Board of Health. The Supreme Court sustained the constitutionality of the law creating the board, investing it with authority to make such orders and regulations as it deemed necessary for its own government, for the public health, the prevention or restriction of disease, and the prevention, abatement or suppression of nuisances, without providing specific standards for its guidance. The court did hold that provisions which made it impossible for the plaintiff to collect garbage and feed it to his hogs under perfectly sanitary conditions were unconstitutional, and that the particular regulation permitting the health commissioner to make exceptions was discriminatory and violated the equal-protection guaranties of both the state and federal Constitutions.

As already pointed out, the gist of the plaintiff's complaint is that the board of health refuses to grant it a permit. There is no allegation or proof that the board has attempted to delegate the power to issue a permit to any subordinate, or that that subordinate has refused to issue a permit in the name of the board or interfered with the board in its duty to issue permits. *Weber* v. *Board of Health* (148 Ohio St., 389), *supra,* is entirely irrelevant to this feature of this case. It is said that that case condemned the provisions giving power to the commissioner to make decisions and to exercise power that was reposed in the board of health, and which it could not delegate. Of course,

there could be no irrevocable delegation, but discretion subject to control and revision by the board could be conferred upon its agents, of whom the commissioner was one. As we read *Weber* v. *Board of Health, supra,* it decided that where a board of health conferred upon the health commissioner the authority to make a finding that would exempt a particular person in the same class to a regulation applicable to all others of the class, that rendered the regulation unequal in its operation and, therefore, unconstitutional.

If the defendant health commissioner should assume to exercise the power that is contested, then will be the time for judicial intervention. The time is not now, nor in this case.

Even assuming the invalidity of the provisions conferring power upon the health commissioner, that would have no effect upon the other provisions of the rule relating to the issuance of permits. The regulations contain a severability provision, expressly providing that the invalidity of any provision shall not affect the validity of the remainder.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.
LONG, J., not participating.