ROBERT T. KIRKWOOD v. JESSEE CARTER, COUNTY JUDGE ET AL

5-5975                                                   482 S.W. 2d 608

Opinion Delivered July 17, 1972

[Rehearing denied August 28, 1972.]

*Thomas A. Glaze,* for appellant

*George F. Hartje* and *William C. Brazil,* for appellees.

*Walker, Kaplan & Mays,* for League of Women Voters of Arkansas, *Amicus Curiae.*

*Judith Rogers,* for American Ass'n. of University Women, Ark. Div., Amici Curiae.

*Youngdahl, Brewer, Forster, Huckabay & Uhlig,* by: *James E. Youngdahl,* for State AFL-CIO and UAW, Amici Curiae.

J. Fred Jones Justice. At the November general election in 1968 the qualified electors of Faulkner County voted for the use of voting machines in that county. On November 1, 1971, the appellant Robert T. Kirkwood filed a taxpayer's petition in the Circuit Court of Faulkner County on behalf of himself and other residents similarly situated seeking a writ of mandamus requiring the appellees, Jesse Carter as county judge, and Tom Lindsey, Clarence Johnson and John F. James as the County Board of Election Commissioners, to comply with §§ 3 and 4

of Art. 12 of Act 465 of 1969 by purchasing or lease-purchasing voting machines to be used in Faulkner County.

The county judge filed a demurrer to the petition on the ground that the petition for mandamus failed to state a cause of action against him. The respondent members of the County Board of Election Commissioners filed an answer in which they attempted to explain and justify their inaction by pointing out that they had been advised, and therefore believed, that there has not been sufficient Faulkner County tax funds available for the purchase, or lease-purchase, of voting machines, and to purchase the machines under such circumstances would be in violation of Art. 12, § 4, of the Constitution of Arkansas.

Following a hearing on the petition the trial court found that on November 5, 1968, the electorate of Faulkner County voted to have voting machines installed in Faulkner County in compliance with Act 465 of 1969. The trial court found that under the petition of a writ of mandamus the court was not called on to determine the number of voting machines required to be purchased by the Faulkner County Board of Election Commissioners, but that the court was only required to determine whether there was sufficient revenue available for the purchase of voting machines. The court found that there were sufficient county funds available for the pirpose of voting machines, but that the number of voting machines to be purchased is within the discretion of the Election Commissioners. The trial court entered its order as follows:

"IT IS THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that the Petition for Writ of Mandamus be, and the same is hereby, granted and upon the application of the Petitioner, the Clerk of this Court is ordered and directed to issue a Writ of Mandamus to Respondents, Tom Lindsey, Clarence Johnson and John F. James, as Faulkner County Board of Election Commissioners, ordering and directing them to initiate and file a plan to purchase or lease-purchase voting machines and showing the

number of voting machines to be purchased or lease-purchased.''

On appeal to this court Mr. Kirkwood relies on the following points:

"The trial court was in error in holding as a matter of law that the number of voting machines is left to the discretion of the County Board of Election Commissioners.

The trial court was in error in sustaining the Demurer of the Respondent Judge Jesse Carter, Dismissing such County Judge from this suit."

Amici curiae briefs have been filed in this case by interested organizations on behalf of the appellant and the case was argued orally before this court. It is apparent from the entire record that the appellant may have confused the trial court's *findings* with the trial court's *order*, and may have assumed, that in the light of past events, the respondent Election Commissioners would interpret the trial court's findings and order as vesting in them full, complete and unlimited discretion in detmining how many voting machines they should purchase or lease-purchase for Faulkner County. We do not so interpret the trial court's findings and certainly we do not so interpret the trial court's order. The Board of Election Commissioners derive their discretion in the performance of their duties from the legislative Act creating and defining their duties, and not from the findings of a trial judge on a petition for mandamus.

It is difficult to understand the delay and the method employed by the Faulkner County Board of Election Commissioners in failing to carry out their duties in connection with this matter. It is apparent from the overall record that instead of seeking the advice of the prosecuting attorney as they had a right and obligation to do under the Constitution and laws of this state, the Election Commissioners sought and followed the advice of the county judge, whose official duties and responsibilities

are entirely separate and apart from those of the Board of Election Commissioners under Act 465 of 1969, as well as in every other respect.

It is definitely suggested by the overall record in this case, that the Faulkner County Board of Election Commissioners simply did not agree with the electorate of Faulkner County as to the wisdom of spending tax money for voting machines. The record indicates that instead of proceeding in an orderly and businesslike manner toward finding ways and means of carrying out the duties of their office under the law and the mandate of the people, the Commissioners did just the opposite by seeking ways and means of avoiding the performances of their duties under Act 465 and under the mandate of the people of Faulkner County.

It is also apparent from the record that perhaps the county judge has been under the impression that he is to approve the expenditure of funds for the purchase of voting machines before the Election Commissioners are permitted to purchase or lease-purchase them under the law. If such has been the impression and attitude of the Board of Election Commisioners and the county judge, such interpretation and attitude should have been dispelled by the order of the trial judge in this case as we interpret it.

The trial court's finding that he was only called upon by the petition for mandamus, to determine whether money was available for the purchase of voting machines falls in the same category as the trial court's findings as to the discretion of the members of the Board of Election Commissioners. The purpose of the writ of mandamus is not to establish legal rights or measure the discretion of public officials, but purpose of the writ of mandamus is to enforce a right after it is already established or to enforce the performance of a duty. *Howard* v. *McDiarmid*, 26 Ark. 100; *Fitch* v. *McDiarmid*, 26 Ark. 482.

The trial court in the case at bar was called on by the petition for the writ of mandamus to enforce the perfor-

mance by the Election Commissioners and the county judge, of the duties imposed upon them by law in regard to the procuring of voting machines in and for Faulkner County, and as we interpret the trial judge's order, he did just that. The trial court simply ordered the members of the Board of Election Commissioners to initiate and file a plan to purchase or lease-purchase voting machines and showing the number of voting machines to be purchased or lease-purchased. There were no duties to be performed by the county judge in connection with the purchase of the voting machines when the petition for the writ of mandamus was filed in this case, and the hearing was conducted thereon, so the trial court was correct in sustaining the demurrer. We are of the opinion that the trial court's order directing the members of the Board of Election Commissioners to initiate and file a plan for the purchase of voting machines means, and should have recited, that they shall do so forthwith.

It is a matter of common knowledge that members of Boards of Election Commissioners are not attorneys and the membership personnel change from time to time in the various countries. The appellees' counsel stated on oral argument in this case that the Faulkner County Board of Election Commissioners had never consulted attorneys as to its legal duties and obligations in connection with procuring voting machines until the taxpayer's petition for mandamus was filed in this case. The issues have been considerably narrowed by the attorneys in their briefs and oral arguments. The appellees state in their brief that no one questions the duties of the Board to purchase voting machines; that the Board has never denied its duties to purchase voting machines and does not do so on this appeal. The appellees argue that the appellant has sought by mandamus to dictate to the Board the number of machines it shall purchase and as already pointed out, the appellant contends just the opposite. The appellant argues that under the order of the trial court the Board, in the exercise of its discretion, may determine that only one machine for the entire county is sufficient. We can anticipate no such gross abuse of discretion under the trial court's order and under advice and directions from competent counsel.

We agree with the appellees that under Ark. Stat. Ann. § 3-1201 et seq. (Repl. 1956) the county Board of Election Commissioners are vested with some discretionary choices in the manner of performing their duties. We also agree with the appellees that the Board has some discretion in arranging for the manner of payment. We deem it unnecessary to discuss in this opinion all the multiple areas of discretion as alleged and argued by the appellees in their brief. The Board of Election Commissioners is now represented by competent counsel who undoubtedly have by this time advised the Board as to the extent of its discretion, and certainly as to the proper exercise of such discretion the Board members do have in the competent performance of the duties of their office pertaining to the procurement of voting machines under the statute and the election mandate.

The area of discretion most seriously questioned in this case has to do with the number of machines to be purchased under two sections of Art. 12 of Act 465 of 1969 (Ark. Stat. Ann. §§ 3-1203—3-1205 [Repl. 1956]), the pertinent portions of these sections are as follows:

"3-1203. * * *If the majority of the votes cast favor the proposal, the County Board of Election Commissioners shall install any voting machines approved by the State Board of Election Commissioners in all voting precincts in the County, or in the case of a City Election in all wards of the City, in which 300 persons voted in the preceeding general election in which members of the United States House of Representatives were elected. The State Board of Election Commissioners or the County Board of Election Commissioners shall have the authority to purchase or lease-purchase voting machines and payment may be provided for in such manner as is deemed best for the interests of the State, County or City in which an affirmative vote is cast under the provisions of this section.

3-1205. * * * Voting machines may be provided for all precincts in all Counties in which 100 or more persons

voted in the last preceding comparable election. Precincts voting less than 100 persons may be consolidated, in conformity of the laws of this State, so that the total vote of the precincts would have exceeded 100 in the above primary or general election, or in a subsequent primary or general election, and a voting machine may then be installed in that consolidated precinct. If it shall be impossible to supply every election precinct with a voting machine or voting machines at any election following the adoption of the machines in a County or City, as many may be supplied as it is possible to procure, and the machines shall be used in precincts of the County designated by the County Board of Election Commissioners in general elections, and by the County Central Committee in primary elections."

It appears to us that the first duty incumbent upon the Election Commissioners under the law and under the order of the trial court, is to determine the number of voting precincts in Faulkner County where as many as 300 votes were cast, and start immediately, and continue in good faith, negotiations for the procurement of voting machines.

We conclude, therefore, that the order of the trial court sustaining the demurrer filed by the county judge should be affirmed. We also conclude that the order of the trial court as to the issuance of the writ of mandamus should be affirmed with the modification that the Commissioners start the performance of their duties thereunder forthwith, and continue such performance in good faith until their statutory duties are fully performed.

The judgment is affirmed as so modified.