John F. WELLS, Individually, and The People of Arkansas upon the Relation of John F. Wells, v. Joe PURCELL, Lieutenant Governor of Arkansas et al

79-289                                    592 S.W. 2d 100

Opinion delivered December 31, 1979
(In Banc)

*James F. Lane,* for appellants.

*Steve Clark,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., for appellees.

JOHN A. FOGLEMAN, Justice. John F. Wells, individually and as a citizen and taxpayer of the State of Arkansas, filed his petition for mandamus in the Circuit Court of Pulaski County, seeking to compel Joe Purcell, Lieutenant Governor of the State of Arkansas, Knox Nelson, President Pro Tem of the Arkansas Senate, and John E. Miller, Speaker of the Arkansas House of Representatives, to adjourn, or attempt to adjourn, their respective chambers of the Seventy-second General Assembly, or to certify the facts of their disagreement over their adjournment date to the Governor, so he could, under his constitutional authority, declare an adjournment. Petitioner exhibited Senate Concurrent Resolution 91, by which it was resolved, with the concurrence of the House of Representatives, that upon a date subsequently to be chosen, the Seventy-second General Assembly would stand in recess until the second Monday in January, 1981, then to be adjourned sine die, unless adjournment occurred earlier.

Respondents admitted that the General Assembly was in extended recess, but denied that appellants were entitled to any relief. They exhibited Senate Concurrent Resolution 14, by which the Senate, with the concurrence of the House of Representatives, had resolved, by a two-thirds vote of each chamber, to extend the regular biennial session beyond a 60-day duration.

It has been suggested that petitioner has no standing to

bring this proceeding because it is a public right, not a private one, he is seeking to enforce. It is true that the statute defining the writ states that it is granted upon the petition of the aggrieved party or of the state, when the public interest is affected. Ark. Stat. Ann. § 33-102 (Repl. 1962). Our statute on this subject has not varied materially since the adoption of the Civil Code in 1869. See § 519, Civil Code of Arkansas; § 7021, Crawford & Moses Digest; § 9001 Pope's Digest, Ark. Stat. Ann. § 33-102 (1947). Early cases supported the contention that, where petitioners alleged no interest to be protected, other than the interest of the public, they were not aggrieved, and were not entitled to an order granting the writ, because in a matter where only the public interest is affected, the writ can only be granted upon application of the state. *Fuller, ex parte,* 25 Ark. 443. It was later held that when the writ is sought for the enforcement of a public right, common to the whole community, it is not necessary that the relator have a special interest in the matter, or be a public officer, but the proceeding must be in the name of the state. *Moses* v. *Kearney,* 31 Ark. 261. Although the action there was dismissed because the applicants for the writ were designated only as residents and owners of lots, there was a clear intimation that, had they applied in the name of the state, their petition should have been considered. Still later in *Willeford* v. *State ex rel,* 43 Ark. 62, a writ of mandamus was granted to compel the clerk and two justices of the peace, who were assisting the clerk in canvassing election returns from an election on the question of moving a county seat, to proceed with the count of the votes in three townships from which they were irregularly transmitted, but was denied as to the returns from another township because the chancery court had taken jurisdiction to inquire into allegations of fraudulent voting. On appeal, this court not only sustained the writ as to the vote in the three townships, but held that the chancery court had no power in the matter, reversed the denial of the writ as to the remaining township and remanded the cause with directions to the trial court to issue the writ. *Moses* involved an effort by the petitioners to require the clerk to remove his office from Lewisburg back to Springfield, based upon their contention that Springfield was still the county seat of Conway County. The real distinction in the two cases is that the proceeding was brought in

*Willeford* in the name of the state upon the relation of the petitioners, while that in *Moses* was not.

The rule is well settled, that when, in the absence of statutory regulation, the proceedings are for the enforcement of a duty affecting not a private right, but a public one, common to the whole community, it is not necessary that the relator should have a special interest in the matter, or that he should be a public officer. *Moses* v. *Kearney,* supra; *Beene* v. *Hutto,* 192 Ark. 848, 96 S.W. 2d 485. It seems that in *Beene,* this court indicated that the statutory formality of proceeding by styling the action in the name of the state upon the relation of the actual petitioners (who were citizens and taxpayers of the affected county) may have been more liberally construed than in earlier cases, because the contention that the action was improperly brought, because not brought in the name of the state, was rejected upon two grounds, i.e., that a suit may be brought by a private citizen to enforce a public duty and Art. 16, § 13 of the Constitution of Arkansas specifically provides for suits brought by taxpayers to protect inhabitants of a city, county or town against the enforcement of any illegal exaction. See also, *Buchanan* v. *Halpin,* 176 Ark. 822, 4 S.W. 2d 510.

Because of the styling and allegations of the petition in this case, we need not decide whether petitioner Wells could have proceeded in his own name. The caption of the petition shows the style of the case as "JOHN F. WELLS, INDIVIDUALLY, AND THE PEOPLE OF THE STATE OF ARKANSAS, UPON THE RELATION OF JOHN F. WELLS." It is alleged in the petition that Wells is a citizen and taxpayer and that all other taxpayers to, and citizens of, this state have an interest in the proper performance of the duty with which Wells is seeking to enforce compliance. We take this petition to be in substantial compliance with our statutory requirement that the action be in the name of the state. See *Radel Concrete Products, Inc.* v. *Clermont County Board of Health,* 107 Ohio App. 159, 152 N.E. 2d 307 (1957). We point out that the respondents have not questioned the standing of the petitioner to bring this action, either in the trial court or on appeal.

It remains, however, to be seen whether the petitioner is

entitled to the relief he seeks. At the outset, we must point out that, under the common law, the writ did not run to the legislative branch of the government. *People* v. *Best,* 187 N.Y. 1, 79 N.E. 890, 116 Am. St. Rep. 586, 1 Ann. Cas. 58 (1907); *People* v. *Morton,* 156 N.Y. 136, 50 N.E. 791, 41 LRA 231, 66 Am. St. Rep. 547 (1898); *State* v. *Bachrach,* 107 Ohio App. 71, 7 Ohio Ops. 2d 402, 152 N.E. 2d 311 (1958), affd. 168 Ohio St. 268, 6 Ohio Ops. 2d 425, 153 N.E. 2d 671. Although Ark. Stat. Ann. § 33-102 (Repl. 1962) clearly states the power of the circuit court to issue the writ to an executive, judicial or ministerial officer to perform an act, the performance of which is enjoined by law, there has been no statute attempting to authorize the courts to issue the writ to the legislature.

The writ of mandamus cannot be issued to the legislature, even when the duty sought to be compelled is clear and unmistakable. *Fergus* v. *Marks,* 321 Ill. 510, 152 N.E. 557, 46 ALR 960 (1926); *Lamson* v. *Secretary of Commonwealth,* 341 Mass. 264, 168 N.E. 2d 480 (1960); *Scarborough* v. *Robinson,* 81 N.C. 409 (1879).

The doctrine of separation of powers, stated in Art. 4, § 2 of our constitution, has probably been the barrier to attempts to extend the reach of the writ to the legislature. Neither of the three separate departments of government is subordinate to the other and neither can arrogate to itself any control over either one of the others in matters which have been confided by the constitution to such other department. *Fergus* v. *Marks,* supra. The legislature, under the separation of powers, can neither be coerced nor controlled by judicial power. *Scarborough* v. *Robinson,* supra; Annot. 74 Am. St. Rep. 544.

The legislature is responsible to the people alone, not to the courts, for its disregard of, or failure to perform, a duty clearly enjoined upon it by the constitution, and the remedy is with the people, by electing other servants, and not through the courts. *Fergus* v. *Marks,* supra; *Fouracre* v. *White,* 7 Boyce (Del.) 25, 102 A. 186 (1917); *Person* v. *Doughton,* 186 N.C. 723, 120 S.E. 481 (1923). See also, *In re Senate Resolution 4,* 54 Colo. 262, 130 P. 333 (1913).

The matter is summarized concisely in an annotation appearing in 153 ALR at p. 522, viz:

It is well settled that the courts have no power to enforce the mandates of the Constitution which are directed at the legislative branch of the government or to coerce the legislature to obey its duty, no matter how clearly or mandatorily imposed on it, with respect to its legislative function.

The Maryland Court of Appeals put the matter in the proper perspective long ago. In *Watkins* v. *Watkins,* 2 Md. 341 (1852), that court said:

In regard to that part of the argument of the learned counsel for the appellant which was based on the suppositious case, that if the foregoing reasoning be correct, the senate might defeat both the spirit and letter of the constitution by a failure to obey its injunctions, we have only to observe, that in all human contrivances confidence must be reposed somewhere, and that under the distribution of the powers of government in our State, it is not given to the judiciary to *compel* action on the part of a co-ordinate branch of the government. Its authority is confined to *restraining* the potency of its enactments when they transcend constitutional limits.

It is appellant's contention that the provisions of the Constitution of Arkansas clearly limit the duration of the regular biennial sessions of the General Assembly and establish a clear and unmistakable duty of the General Assembly to adjourn, or attempt to adjourn, upon the completion of regular or special session business. Appellant pointed out that the date fixed for the convening of the Seventy-third General Assembly by Ark. Stat. Ann. § 4-101 (Repl. 1976) is the second Monday in January, 1981. The petitioner quotes Art. 5, § 17 of our Constitution, which provides that the regular biennial sessions of the General Assembly shall not exceed 60 days in duration, unless by a vote of two-thirds of the members elected to each house. Petitioner also points out that, after completion of the business enumerated in a proclamation for an extraordinary or special session of the

General Assembly, it can remain in session for a period not to exceed 15 days by a vote of two-thirds of all members elected to both houses. Art. 6, § 19, Constitution of Arkansas. He also relies upon the constitutional provision that, if the House and Senate disagree over the time of adjournment of either a regular or special session, the Governor has the authority to declare the adjournment, if the facts of the disagreement are certified to him by the presiding officers of the two chambers. Constitution, Art. 6, § 20.

There is certainly no clear limitation upon the legislative power to extend the session by a two-thirds vote and no clear specification of a time beyond which, in the discretion of the General Assembly, exercised by the vote of two-thirds of the members of both houses, the session may not be extended. The determination of the date for termination of an extended session is a matter of legislative discretion.

It must always be remembered that the state's constitution is neither an enabling act nor a grant of enumerated powers, and the legislature may rightfully exercise the power of the people, subject only to restrictions and limitations fixed by the constitutions of the United States and this state. *Jones* v. *Mears,* 256 Ark. 825, 510 S.W. 2d 857; *St. L. I. M. & S. Ry. Co.* v. *State,* 99 Ark. 1, 136 S.W. 938. Under our system of government the legislature represents the people and is the reservoir of all power not relinquished to the federal government or prohibited by the state constitution. *Rockefeller* v. *Hogue,* 244 Ark. 1029, 429 S.W. 2d 85; *Hackler* v. *Baker,* 233 Ark. 690, 346 S.W. 2d 677.

Adjourning and extending a legislative session are clearly among the powers of the General Assembly. It has exercised its powers. Even if they have been exercised erroneously, it is clear that the Circuit Court of Pulaski County had no power, without violating Art. 4, § 2 of the Arkansas Constitution and extending the scope of the writ of mandamus, to issue the writ to that body. Assuming, however, that the General Assembly had been subject to that writ, mandamus could not have been used to correct an erroneous decision already made. *Burney* v. *Hargraves,* 264 Ark. 680, 573 S.W. 2d 912.

Appellant contends, however, that the actions of the presiding officers of the two houses of the General Assembly can be controlled by mandamus. He does not specify just what these presiding officers should be required to do. Mandamus will not lie to compel the presiding officer of the senate or the speaker of the house to perform any act which is within his legislative functions, except for acts which are purely ministerial in character. *State* v. *Bolte,* 151 Mo. 362, 52 S.W. 262, 74 Am. St. Rep. 537 (1899); *Kavanaugh* v. *Chandler,* 255 Ky. 182, 72 S.W. 2d 1003, 95 ALR 273 (1934). See Annot., 66 Am. St. Rep. 556, 18 Am. Dec. 239. The only act on their part, which could be said to be ministerial, is to certify the disagreement of the two houses to the Governor, so he could adjourn the session. But the two houses are not in disagreement, even if they are in error. These officers are totally devoid of power to act in the matter. The courts have no supervisory powers over the legislature, a separate and coordinate branch of government. *In re Love's Estate,* 186 N.C. 714, 120 S.E. 479. To undertake to compel the presiding officers to act contrary to the action of their respective houses would constitute an attempt to supervise those actions, in violation of Art. 4, § 2. Mandamus cannot be used to undo legislative action or to compel revocation or rescission of legislative action in violation of the doctrine of separation of powers. *State* v. *City of Shreveport,* 231 La. 840, 93 So. 2d 187 (1957).

The eyes, ears and hands of the presiding officer of a house of the General Assembly are those of the house; he carries forward that which the house determines; and it would be intolerable that the presiding officer, even if he be the lieutenant governor, of a house should have the power to act against its will and determination or to refuse to act in defiance of its will. *State* v. *Corley,* 36 Del. 135, 172 A. 415 (1934). It has been held that the courts have no power under the separation of powers, by mandamus or otherwise, to interfere in any manner with the proceedings of either of the component branches of the General Assembly, or even with the actions of its clerks, so long as they are acting in obedience to the will of those bodies. *Fox* v. *Harris,* 79 W. Va. 419, 91 S.E. 209 (1917).

The authority of the appellees and respondents, the

Lieutenant Governor, the President Pro Tem, and the Speaker, seems to us to be strictly limited, in the matter before us. We would not know how to specify what they should do, if we should order that the writ be granted. It would certainly be contrary to the separation of powers for a court to order them to act contrary to the expressed will of the bodies over which they preside.

The writ of mandamus does not create or confer authority upon the officer to whom it is directed. It should be directed to those whose duty it is to do the thing required. It must clearly appear that the person to whom it is directed has the absolute power to execute it; otherwise it should not be issued. Where the duty sought to be enforced is imposed upon the senate and the house and those bodies have refused to do that which is sought to be compelled, neither the president of the Senate nor the Speaker of the House has the power, without the concurrence of the house over which he presides, to execute the order, if made. *Turnball* v. *Giddings,* 95 Mich. 314, 54 N.W. 887, 19 LRA 853 (1893).

One seeking a writ of mandamus must show a clear, certain and specific legal right and the absence of any other specific, adequate legal remedy. *Arkansas State Highway Employees Local 1315* v. *Smith,* 257 Ark. 174, 515 S.W. 2d 208; *Bunting* v. *Tedford,* 261 Ark. 638, 550 S.W. 2d 459; *Girley* v. *Wood,* 258 Ark. 408, 525 S.W. 2d 454. The purpose of the writ is to enforce the performance of a duty or a legal right after it has been established and not to establish a legal right. *Kirkwood* v. *Carter,* 252 Ark. 1124, 482 S.W. 2d 608; *Brown* v. *Curtis,* 254 Ark. 162, 492 S.W. 2d 235. The duty to be enforced by mandamus must be one which is clearly, specifically and peremptorily enjoined by law. *Arkansas State Highway Employees Local 1315* v. *Smith,* supra. Where petitioner is not clearly entitled to the relief sought, this extraordinary writ will not be granted. *Henderson* v. *Dudley,* 264 Ark. 697, 574 S.W. 2d 658; *Brown* v. *Curtis,* supra. Mandamus may not be used to determine in advance what the petitioners' rights are or the action to be taken shall be. *Bunting* v. *Tedford,* supra.

Appellant has failed to show a clear, certain, specific or

established legal right which can be enforced by writ of mandamus to the presiding officers of the houses of the General Assembly. The courts cannot interfere with the legislature or the legislative process; they can only determine the validity of its acts. *State* v. *Meyers,* 38 Wash. 2d 330, 229 P. 2d 506 (1951).

The circuit court properly denied mandamus.

The judgment is affirmed.

HARRIS, C.J., not participating.

HICKMAN, SMITH, and PURTLE, JJ., concur.

DARRELL HICKMAN, Justice, concurring. While I agree that mandamus is not a proper remedy in this case, the constitutionality of the General Assembly's extension of its regular session is too important a question to ignore. The law is well settled that a legislature cannot enact legislation after the expiration of its session. *State, ex rel Heck's Discount Center, Inc.* v. *Winters,* 147 W. Va. 861, 132 S.E. 2d 374 (1963). See also, *Dillon* v. *King,* 87 N.M. 79, 529 P. 2d 745 (1974).

The General Assembly convened for its regular 60 day session early in 1979. It recessed on April 20, 1979, and is to remain in recess until the second Monday in January, 1981, approximately when its next regular session is to begin. While the legislature has apparently gone home, it has left the door open to recall itself at any time. It is at least possible that such a procedure infringes on the governor's prerogative under the Arkansas Constitution to call the General Assembly into special sessions. See ARK. CONST., Art. VI, § 19.

The Arkansas Constitution provides that the General Assembly shall meet bienially for 60 days and may extend a session only by a vote of two thirds of the members of each house. ARK. CONST., Art. V, § 17. No doubt it was intended that an extended session would be used by the General Assembly to finish its business. I do not believe that

the Arkansas Constitution can be fairly read to mean that the legislature can remain in session at all times.

This procedure may violate the doctrine of separation of powers in other ways. One of the reasons given by the General Assembly for going into this extended session, as it is called, is so that it may reconsider any bills disapproved by the governor. The Arkansas Constitution would seem to grant to the governor the right, at the end of its regular session, to veto any bills without the fear that the veto power would be thwarted. The General Assembly may, by holding itself ready at all times to reconsider a bill vetoed by the governor, have crossed that vague line of the separation of powers guaranteed by the constitution. ARK. CONST., Art. IV, § 1 and Art. VI, § 2.

This practice by the General Assembly has apparently been going on for some years but it should be reconsidered. The simple fact that a definite date has been set for the termination of the extended session may not save such a practice, especially when that date is an unrealistic one, one that cannot be satisfactorily defended except by a severe strain on the interpretation of the Arkansas Constitution.

While we do not have the authority to mandamus the General Assembly regarding its business, we do have the responsibility to pass on the acts of the General Assembly and it may well be that any action taken by the General Assembly during such a session will be illegal, a consequence no doubt the General Assembly would not welcome.

GEORGE ROSE SMITH and PURTLE, JJ., join in the concurrence.