Mr. Dub Maxwell, Sponsor Lost Cherokee of Arkansas 108 South Fisher Jonesboro, AR 72401
Dear Mr. Maxwell:
You have requested certification, pursuant to A.C.A. § 7-9-107, of the popular name and ballot title for a proposed amendment to the Arkansas Constitution. Your proposed popular name and ballot title are as follows:
 Popular Name THE LOST CHEROKEE OF ARKANSAS Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO ESTABLISH THE LOST CHEROKEE OF ARKANSAS AS A STATE RECOGNIZED TRIBE (ALSO KNOWN AS THE ARKANSAS CHEROKEES OR THE CHEROKEES ON THE ARKANSAS RIVER). THE LOST CHEROKEE OF ARKANSAS ARE DESCENDANTS OF THE ORIGINAL CHEROKEE NATION WHO SETTLED IN THE STATE OF ARKANSAS, RATHER THAN IN INDIAN TERRITORY (OKLAHOMA), AS EARLY AS 1785. THE LOST CHEROKEE HAS CONTINUED A FORM OF TRIBAL GOVERNMENT FOR MORE THAN ONE HUNDRED EIGHTY (180) YEARS AND, IN 1999, ADOPTED A CONSTITUTION, THEREBY ESTABLISHING A NEW AND WORKING TRIBAL ORGANIZATION IN ARKANSAS. THE PEOPLE OF THE LOST CHEROKEE OF ARKANSAS ARE TAX-PAYING CITIZENS OF THE STATE OF ARKANSAS AND HAVE REPRESENTED THE STATE IN THE UNITED STATES ARMED FORCES THROUGH SEVERAL WARS AND OTHER MILITARY ACTIONS. AS A STATE-RECOGNIZED TRIBE, THE LOST CHEROKEE OF ARKANSAS WILL BE ELIGIBLE FOR ECONOMIC DEVELOPMENT, EMPLOYMENT ASSISTANCE, EDUCATIONAL, CULTURAL, LANGUAGE, TOURISM AND SOCIAL SERVICES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to pass on the sufficiency of the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. This process is in aid of Amendment 7 to the Arkansas Constitution, which reserves to the people the power to enact state laws and to propose statewide constitutional amendments. See Ark. Const. amend. 7 ("State Wide Petitions") and U.S. Term Limits, Inc. v.Hill, 316 Ark. 251, 872 S.W.2d 349 (1994). The law provides that the Attorney General may approve and certify or substitute and certify a more suitable and correct popular name and ballot title; or he may reject the entire ballot title, popular name, and petition if he determines that the ballot title or the nature of the issue is presented in such a manner that the ballot title would be misleading. A.C.A. § 7-9-107(c).
Having reviewed your proposed constitutional amendment, ballot title, and popular name pursuant to this authority, it is my determination that your submission must be rejected because it does not fall within the power of initiative under Amendment 7 to the Arkansas Constitution. The Arkansas General Assembly, of course, and the therefore the people by virtue of Amendment 7, have absolute power to legislate in all fields unless expressly or by necessary implication denied that power by the Arkansas or United States Constitution. Wells. v. Purcell, 267 Ark. 456, 464,592 S.W.2d 100 (1979). As recognized by the Arkansas Supreme Court, however, Amendment 7 cannot empower the people of the State of Arkansas to initiate any measure that falls outside the powers reserved to the states and their citizens by the United States Constitution. Donovan v. Priest,326 Ark. 353, 931 S.W.2d 119 (1996). The court in Donovan explained this principle as follows:
 `[t]he voters of this state essentially have, within constitutional limits, a right to change any law or any provision of our Constitution they deem appropriate through Amendment 7 to the Constitution.' Dust v. Riviere, 277 Ark. 1, 4, 638 S.W.2d 663, 665 (1982) (emphasis added). Clearly those constitutional limitations derive from both the United States Constitution and this state's constitution. On the federal level, the rights reserved to the states and to the people of the states originate from the Tenth Amendment to the United States Constitution, which provides that `[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.' Thus, our Amendment 7 cannot empower the people of this state to initiate any measure, law, or amendment which falls outside the powers reserved to the states and their citizens by the United States Constitution.
326 Ark. at 357-58.
On three previous occasions I have declined to certify popular names and ballot titles under this principle. See Op. Att'y Gen. 2005-045
(proposing to repeal Article 2, §§ 24, 25 and 26 (the religion clauses) of the Arkansas Constitution); Op. Att'y Gen. 2004-108 (proposing to call a United States Constitutional Convention); and Op. Att'y Gen. 2004-072
(proposing to ratify the "Equal Rights Amendment" to the United States Constitution).
Applying this principle to your proposed amendment, I must conclude that Ark. Const. Amendment 7 does not authorize this measure, which seeks official recognition of the "Lost Cherokee of Arkansas" as an "Indian tribe" and a number of enumerated powers, rights and privileges for the "Lost Cherokee." Specifically, § 2 of your proposed amendment provides as follows:
 The Lost Cherokee of Arkansas is hereby recognized as an Indian tribe within the State of Arkansas as descendants of the original Cherokee Nation. All rights and privileges of Indian tribes and the members of the tribe under any existing Federal treaty, Executive order, agreement or statute, or any other Federal authority are hereby adopted by the State of Arkansas for the Lost Cherokee of Arkansas.
Other provisions of your proposed amendment authorize the adoption and amendment of a constitution and by-laws for the Lost Cherokee, including the rights to "prevent the sale, disposition, lease or encumbrance of tribal lands" and to "negotiate with the Federal, State and local governments." Id. § 3.
In my judgment the subject matter of your proposed constitutional amendment is not reserved to the people of the State of Arkansas by theTenth Amendment to the United States Constitution, as discussed inDonovan, supra.
The United States Supreme Court has stated in this regard that:
 . . . the Constitution grants Congress broad general powers to legislate in respect to Indian tribes, powers that we have consistently described as "plenary and exclusive." E.g., Washington v. Confederated Bands and Tribes of Yakima Nation, 439 U.S. 463, 470-471 (1979); Negonsott v. Samuels, 507 U.S. 99, 103 (1993); see Wheeler, 435 U.S. [313] at 323; see also W. Canby, American Indian Law 2 (3d ed. 1998) (hereinafter Canby) ("[T]he independence of the tribes is subject to exceptionally great powers of Congress to regulate and modify the status of the tribes"). This Court has traditionally identified the Indian Commerce Clause, U.S. Const., Art. I, § 8, cl. 3,[1] and the Treaty Clause, Art. II, § 2, cl. 2,[2] as sources of that power. E.g., Morton v. Mancari, 417 U.S. 535, 552 (1974); McClanahan v. Arizona Tax Comm'n, 411 U.S. 164, 172, n. 7 (1973); see also Canby 11-12; F. Cohen, Handbook of Federal Indian Law 209-210 (1982 ed.) (hereinafter Cohen) (also mentioning, inter alia, the Property Clause). The "central function of the Indian Commerce Clause," we have said, "is to provide Congress with plenary power to legislate in the field of Indian affairs." Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 192 (1989); see also, e.g., Ramah Navajo School Bd., Inc. v. Bureau of Revenue of N.M., 458 U.S. 832, 837 (1982) ("broad power" under the Indian Commerce Clause); White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 142 (1980) (same, and citing Wheeler, supra, at 322-323).
* * *
 [see also] Worcester v. Georgia, 6 Pet. 515, 557 (1832) ("The treaties and laws of the United States contemplate . . . that all intercourse with [Indians] shall be carried on exclusively by the government of the union").
United States v. Lara, 541 U.S. 193, 200, 202 (2004). See also25 U.S.C. § 2 (investing the Commissioner of Indian Affairs with "management of all Indian affairs and of all matters arising out of Indian relations"); and 25 C.F.R. §§ 83.1 to83.13 ("Procedures for Establishing that an American Indian Group Exists as an Indian Tribe").
As also stated by the United States Supreme Court, in addressing the relationship between federal and state power in this regard:
 . . . our inquiry is limited to determining whether the Indian Commerce Clause, like the Interstate Commerce Clause, is a grant of authority to the Federal Government at the expense of the States. The answer to that question is obvious. If anything, the Indian Commerce Clause accomplishes a greater transfer of power from the States to the Federal Government than does the Interstate Commerce Clause. This is clear enough from the fact that the States still exercise some authority over interstate trade but have been divested of virtually all authority over Indian commerce and Indian tribes.
Seminole Tribe of Florida v. Florida, 517 U.S. 44, 62 (1996).
It has also been stated, with regard to the Tenth Amendment and whether powers have been reserved by the states to regulate Indian affairs, as follows:
 The Tenth Amendment reserves to States all powers not granted to the federal government by the Constitution. U.S. Const. Amend. X. "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress." New York [v. United States], 505 U.S. [144] at 156, 112 S.Ct. 2408. As previously discussed, the Supreme Court has recognized Congress' plenary power "to deal with the special problems of Indians. . . ." Morton [v. Mancari], 417 U.S. [535] at 551, 94 S.Ct. 2474. This power stems "from the Constitution itself." Id.
at 552, 94 S.Ct. 2474. Indeed, the Supreme Court has held that neither the fact that an Indian Tribe has been assimilated, nor the fact that there had been a lapse in federal recognition of a tribe, was sufficient to destroy the federal power to handle Indian affairs. United States v. John, 437 U.S. 634, 652, 98 S.Ct. 2541, 57 L.Ed.2d 489 (1978). Accordingly, the Tenth Amendment does not reserve authority over Indian affairs to the States. . . .
City of Roseville v. Norton, 219 F.Supp.2d 130 (D.D.C. 2002) at 153-154.
There are two federal statutes, however, that mention state recognition of Indian tribes. See 25 U.S.C. §§ 301 to 310 (the "Indian Arts and Crafts Enforcement Act of 2000"). See also 18 U.S.C. § 1159 (providing a criminal penalty for violation). Section 305e of this Act establishes a cause of action for misrepresentation of Indian-produced goods and the applicable definition of "Indian tribe" in that section includes "any Indian group that has been formally recognized as an Indian tribe by a State Legislature or by a State commission or similar organization legislatively vested with State tribal recognition authority. . . ."25 U.S.C. § 305e (d)(3)(B). See also 18 U.S.C. § 1159 (c)(3)(B) (defining "Indian tribe" in the same manner). The legislative history of the Act shows that the portion of the definition of "Indian tribe" addressing state recognition was added as an amendment to the bill because "[s]everal members of Congress, who have state but not federally recognized Indian Tribes in their districts, objected to the definition of Indian Tribe, on the grounds that it did not include state recognized tribes. Because such tribes were not "Indian tribes" within the meaning of the [original] bill, artisans in those tribes who represented their goods as Indian made would arguably be in violation of the Act. To avoid this problem, the definition of Indian tribe was revised to include state recognized tribes"). H.R. Rep. 101-400 (II), 1990 U.S.C.C.A.N. 6391 at 6394-5.
These federal statutes appear to acknowledge power of state governments to recognize Indian tribes, at least for the purposes of the "Indian Arts and Crafts Enforcement Act of 2000." The status of this enactment with relation to Tenth Amendment jurisprudence is unclear, however. I have found no specific federal precedent or commentary in this regard. In any event, it does not appear that the State of Arkansas or its people retain any power under the Tenth Amendment to regulate the much broader range of activities discussed in your proposed constitutional amendment.
It thus seems clear that neither the United States Constitution nor Amendment 7 to the Arkansas Constitution reserves to Arkansas voters the power to grant recognition of the "Lost Cherokee" in conjunction with the concomitant rights you enumerate in your proposed constitutional amendment. I must therefore respectfully decline to certify a popular name and ballot title for this measure.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh
[1] The so-called "Indian Commerce Clause" is found in Article I, § 8 cl.3 of the United States Constitution and it provides that: "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes. . . ." (Emphasis added).
[2] The so-called "Treaty Clause" states that [The President] shall have Power, by and with the Advice and Consent of the Senate, to make Treaties. . . ." United States Constitution, Article II, § 2, cl. 2.