## ARKANSAS STATE HIGHWAY EMPLOYEES
## LOCAL 1315 *v.* Maurice SMITH et al

74-91                                    515 S.W. 2d 208

### Opinion delivered October 28, 1974
[Rehearing denied December 2, 1974.]

*John T. Lavey*, for appellant.

*Bill S. Clark* and *David A. Orsini*, for appellees.

J. FRED JONES, Justice. This is an appeal by Arkansas State Highway Employees Local 1315 from an order of the Pulaski County Circuit Court denying a petition for a writ of mandamus directing the Arkansas State Highway Commission to deduct union dues from the salaries and wages of the members of appellant Employees Local 1315.

The appellant contends that the trial court erred in dismissing its petition and argues that under Ark. Stat. Ann. § 13-349 (B) (7) (Supp. 1973) it is entitled to the relief prayed; that the statute places a mandatory duty on the Commission

to deduct union dues from wages when requested by the employee, and the Commission has no discretion in failing or refusing to do so when so requested. That portion of the provision of the statute on which the appellant relies, reads as follows:

"Deductions from the payrolls of State employees, both regular and extra help, shall be permitted only for the following purposes:

(7) payment of union dues when requested in writing by State employees."

The question before the trial court was whether this statutory provision was mandatory or permissive, and the question before us on appeal is whether the trial court erred in determining that it was permissive and not subject to mandamus. Ark. Stat. Ann. § 13-349 (B) (Supp. 1973) is a part of the "General Accounting Procedures" Law pertaining to public finances as finally digested following several legislative Acts and amendments.

Ark. Stat. Ann. § 13-349 (A) (Supp. 1973) pertains to monthly, weekly and hourly salaries, and subsection (B) in its entirety reads as follows:

"PAYROLL DEDUCTIONS. Deductions from the payrolls of State employees, both regular and extra help, shall be permitted only for the following purposes: (1) withholding taxes; (2) social security contributions; (3) contributions to any State Retirement System or approved plan of deferred compensation; (4) group hospital and medical and life insurance deductions; (5) payments to State employees' credit unions; (6) value of maintenance (prerequisites); (7) payment of union dues when requested in writing by State employees; (8) purchase of United States Government Savings Bonds; and (9) for such other purposes as specifically authorized by law, but not enumerated in this subsection. Provided, that such deductions as are authorized by this subsection shall be made in compliance with rules, regulations and procedures established by the Chief Fiscal Officer of the State."

The legislative history and overall purpose of the statute are of some value in determining whether this payroll deduction provision of the statute is mandatory or permissive and, thus, whether its enforcement is subject to the extraordinary remedy of mandamus.

The original Act 412 of 1955 was entitled:

"An Act to Provide for and Establish General Accounting Procedure for the State of Arkansas and Its Agencies, in Connection with Budget and Pre-Audit Practices, the Recording of the Receipts and Expenditures of State Funds, and Other General Fiscal Transactions."

The purpose of the Act, as recited therein, was as follows:

"(A) To establish budget making procedure and define the duties and responsibilities in connection therewith of the Executive and Legislative Departments of the state government.

(B) To provide for certain budget controls in order to prohibit deficit spending.

(C) To establish and define a system of pre-audit procedure for the expenditure of all state funds.

(D) To establish regulations and uniform procedure for the preparation of payrolls and other disbursement documents for state agencies; and to promulgate rules and regulations with respect to travel, revolving and petty cash funds, reimbursements and other general fiscal transactions.

(E) To further define the powers and duties of the State Comptroller, and the additional duties of the State Auditor and State Treasurer in connection with general accounting procedure and fiscal practices."

Section 5 of the 1955 Act set up budget controls and provided for each agency to file certain information with the State Comptroller for an allotment system promulgated by the Comptroller with the approval of the Governor.

By Act 165 of 1963 Section 5 of Act 412 of 1955 was amended by adding a new paragraph providing in part as follows:

"(2) The State Comptroller shall describe and explain to each State agency the requirements of the General Assembly in connection with the disbursements of appropriations made available to the agency, and particularly the procedure to be followed in establishing budget accounts within the item of appropriation for 'maintenance and general operation.' For the purpose of uniformity in procedure, and in order to carry out the intentions of the General Assembly in providing for such budget controls, the State Comptroller shall have the power and authority to make reasonable rules and regulations in connection with all budget practices, and shall have the authority to establish standards for, and set our definitions of the terms used in, the itemized listings of the proposed budget for 'maintenance and general operation' as provided for in the appropriation act for each State agency, and for such other items of appropriations as are classified by Section 11 of this Act."

Section 11 of the 1955 Act recited the purpose of expenditure analysis and budget control, and designated certain classifications under which the appropriations of the General Assembly should be classified. The general classifications so designated were for personal services including regular salaries and extra help, maintenance or general operation, grants and aid, permanent improvements and construction and special appropriations and allotments. Section 13 (B) provided that the State Comptroller should establish a system of classifying the disbursements of state funds in accordance with the object and purpose of such expenditures, and required that he "shall prepare an expenditure code manual covering the system of classifying expenditures, and shall supply all state agencies with a copy of the same."

By Act 165 of 1963 section 11 of the 1955 Act was also amended pertaining to classification for personal services under regular salaries and extra help and the payroll deduction provision was added to this classification as follows:

"(A) Personal Services — For Regular Full-Time or

Part-Time State Employees:

(A-1) Regular Salaries. This classification shall be applicable to all salaries for state employees where the number and maximum amounts of such salaries are established by law, as provided by Article 16, Section 4 of the Constitution of the State of Arkansas.

(A-2) Extra Help. This title shall be applicable to all part-time or temporary employees, as provided for by law; and unless specifically provided for by the appropriation measure, the number and rates of pay for such temporary employees shall not exceed, at any one time, those established by law for regular salaries for comparable services for the agency having such appropriation for Extra Help.

(A-3) Payroll Deductions. Deductions from the payrolls of state employees, both regular and extra help, shall be permitted only for the following purposes: (1) withholding taxes; (2) social security contributions; (3) retirement systems; and (4) group hospital and medical insurance deductions, where paid in their entirety by the insured state employees; provided that the payroll for any agency shall not contain more than one group deduction for such hospital and medical insurance for any given pay period."

By Act 86 of 1965 subsection (A-3) of section 11 of the 1955 Act was amended to "Permit Payroll Deductions from the Salaries of State Employees for Payments to State Employees' Credit Unions," and provided as follows:

"SECTION 1. Subsection (A-3) of Section 11 of Act 142 of 1955, as amended, the same being Sub-Section (A-3) of Section 13-311 of the Arkansas Statutes of 1947, is hereby amended to read as follows:

'(A-3) Payroll Deductions. Deductions from the payrolls of state employees, both regular and extra help, shall be permitted only for the following purposes: (1) withholding taxes; (2) social security contributions; (3) retirement system; (4) group hospital and medical insurance deductions, where paid in their entirety by the

insured state employees; provided that the payroll for any agency shall not contain more than one group deduction for such hospital and medical insurance for any given pay period; and (5) payments to state employees' credit unions.' "

By Act 133 of 1967 section 11 of the 1955 Act was again amended to read as follows:

" 'Payroll Deductions. Deductions from the payrolls of state employees, both regular and extra help, shall be permitted only for the following purposes: (1) withholding taxes; (2) social security contributions; (3) retirement systems; (4) group hospital and medical insurance deductions, where paid in their entirety by the insured state employees; provided that the payroll for any agency shall not contain more than one group deduction for such hospital and medical insurance for any given pay period; payments to state employees' credit unions; and (5) payment of union dues when requested in writing by state employees.

SECTION 2. This Act shall take effect July 1, 1967."

This Act was approved February 23, 1967. Subsection (A-3) of the 1955 Act was again amended in the same 1967 session of the Legislature by Act 487, approved April 4, 1967, and this Act in its entirety reads as follows:

"AN ACT to Amend Act 412, Arkansas Acts of 1955, as Amended, Section 11 (A-3) [Ark. Stats. (1947) Section 13-311 (A-3)]; to Authorize Deductions From the Salaries of Employees for Value of Employees Maintenance; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Act 142, Arkansas Acts of 1955, as amended, Section (A-3) [Ark. Stats. (1947) Section 13-311 (A-3)] is amended to read as follows:

'Payroll Deductions. Deductions from the payrolls of state employees, both regular and extra help, shall be permitted only for the following purposes: (1)

withholding taxes; (2) social security contributions; (3) retirement systems; (4) group hospital and medical insurance deductions; (5) payments to state employees' credit unions; (6) value of maintenance (prerequisite) as determined by the governing board, commission or head of a state agency; and (7) payment of union dues when requested in writing by state employees.'

SECTION 2. All laws and parts of laws in conflict with this Act are hereby repealed.

SECTION 3. The provisions of this Act shall be effective as of February 1, 1967, other than Item 7, above, which shall become effective July 1, 1967.

SECTION 4. It has been found and determined by the General Assembly that Public Law 89-601 establishes certain minimum wage and overtime payment requirements for certain state agencies, and that the value of maintenance (prerequisite) received by an employee is a definite factor in determining his rate of pay, especially in establishing uniformity of payment for comparable duties and responsibilities, therefore, an emergency is hereby declared to exist and this Act being necessary for the immediate preservation of public peace, health and safety shall be in full force and effect from and after its passage and approval.

APPROVED: April 4, 1967."

By Act 876 of 1973 the "General Accounting Procedures" law of 1955, with all amendments thereto, was outright repealed and the entire subject was covered in this one comprehensive Act with section 23 (B) of this Act reading as follows:

"PAYROLL DEDUCTIONS. Deductions from the payrolls of State employees, both regular and extra help, shall be permitted only for the following purposes: (1) withholding taxes; (2) social security contributions; (3) contributions to any State Retirement System or approved plan of deferred compensation; (4) group hospital and medical and life insurance deductions; (5) payments to State employees' credit unions; (6) value of

maintenance (prerequisites); (7) payment of union dues when requested in writing by State employees; (8) purchase of United States Government Savings Bonds; and (9) for such other purposes as specifically authorized by law, but not enumerated in this subsection. Provided, that such deductions as are authorized by this subsection shall be made in compliance with rules, regulations and procedures established by the Chief Fiscal Officer of the State."

Section 28 of this Act, under "Rules and Regulations, provided as follows:

"The Chief Fiscal Officer of the State is hereby empowered to make, amend, and enforce, such reasonable rules and regulations, not inconsistent with law, as he shall deem necessary and proper to effectively carry out the provisions of this act and the public policy as herein before set forth; and the same shall be published in an 'Administrative Procedures Manual' and distributed to the various State agencies."

This Act was made effective from and after July 1, 1973, and section 33 of the Act provides as follows:

"This Act repeals and replaces Act 412 of 1955 and all laws amendatory thereto. (Sections 13-301, et seq. Ark. Stats. Ann.)"

As already stated, this case comes to us on the denial of a petition for writ of mandamus' and, of course, mandamus is not a writ of right but is directed to the sound discretion of the court, and the parties applying for it must show a specific legal right and the absence of any specific legal remedy. *Goings* v. *Mills,* 1 Ark. 11. See also *Fitch* v. *McDiarmid,* 26 Ark. 482; *State* v. *Bd. Dir. School Dist. of Ashdown,* 122 Ark. 337, 183 S.W. 747.

In *Ark. State Highway Comm'n* v. *Otis & Co.,* 182 Ark. 242, 31 S.W. 2d 427, the legislative Act involved was stated as follows:

"Section 1 of act 153 of the Acts of 1929 provides that, as soon as possible, the commission shall ascertain the

amount of the valid outstanding indebtedness provided for in the act. To ascertain means to find out or to determine the amount of such indebtedness. In the discharge of the mandate of the statute, it became the duty of the commission to determine the amount and validity of the claims presented."

Twenty-four of the twenty-six claimants under this Act had reduced their claims to judgments and it was admitted that the claims of the other two claimants were correct as to amounts and the balances due upon them. In a mandamus action brought by the claimants the Highway Commission contended that according to the construction it placed upon the Act under which the claims accrued, it concluded it could not legally pay the claims. During the progress of the trial an opportunity was given the Commission to ascertain the validity and amount of each claim and the Commission refused to do so. The trial court awarded a writ of mandamus against the Arkansas State Highway Commission and adjudged that it should pay the amount of the claims. In reversing the judgment of the trial court on abuse of its discretion, this court said:

"Mandamus is an extraordinary remedy which is awarded not as a matter of right but in the exercise of a sound judicial discretion. It is resorted to for the purpose of securing judicial or *quasi*-judicial action, and not for determining in advance what that action shall be. A party to be entitled to the right must show that he has a clear, legal right to the subject-matter and that he has no other adequate remedy. *Merritt* v. *School District*, 54 Ark. 468, 16 S.W. 287; *Rolfe* v. *Spybuck Drainage Dist. No. 1*, 101 Ark. 29, 140 S.W. 988; *Patterson* v. *Collinson*, 135 Ark. 105, 204 S.W. 753; *Snapp* v. *Coffman*, 145 Ark. 1, 223 S.W. 360; *Duncan Townsite Co.* v. *Lane*, 245 U.S. 308, 38 S. Ct. 99; and *Ex parte* Wagner, 249 U.S. 465, 39 S. Ct. 317."

In 55 C.J.S. § 64, at p. 104, is found the following language:

"The duties which will be enforced by mandamus must be clear legal duties, that is, duties which are clearly, specifically, and peremptorily enjoined by law."

And at p. 108 of this section is found the following:

"It is not sufficient that a statute or ordinance should merely authorize or permit an act to be done to authorize the issuance of a writ of mandamus to compel the performance of the act; the statute must be mandatory and not merely permissive, and must not confer any discretion in the matter; and it has been held that mandamus should not issue to enforce a duty gathered by doubtful inference from a statute of uncertain meaning."

By the above citations we are not saying that the appellant pursued the wrong remedy in the case at bar, nor do the appellees make such contention. What we do say, however, is that before we can reverse the trial court in its refusal to grant a petition for mandamus, we must find that the duties, the performance of which are sought to be mandated, are clear legal duties specifically and peremptorily enjoined by law, and that the trial court abused its discretion in denying the petition for the writ. We are unable to reach such conclusion in the case at bar.

From a careful examination of the language employed in Ark. Stat. Ann. § 13-349 (B) (Supp. 1973), as that subsection was amended from time to time, and when examined in the light and context of the entire Act, we are forced to the conclusion that the "payroll deductions" provision as confined to § 13-349 (B) is permissive rather than mandatory. Certainly we cannot say it is *clearly* mandatory.

This subsection of the statute had the attention of the Legislature at least on five different occasions. As first enacted in 1965, the wording was that "Deductions from the payrolls of state employees, both regular and extra help, shall be permitted only for the following purposes." This wording was never changed as additional purposes were added to the ones for which payroll deductions were first permitted.

Deduction for union dues was the only item or purpose requiring request, or authority, from the employee and certainly if deductions for union dues were mandatory upon written request of the employee under purpose No. 7, deductions would be mandatory for the remaining eight purposes

where no requests are required. We are forced to the conclusion that under this statutory provision payroll deductions are *permitted* for the purposes therein enumerated and are not permitted for any other purposes nor required.

It would appear that the entire payroll deduction provision of the statute was enacted for the protection of state employees against payroll deductions except for the purposes therein enumerated. The ninth purpose added to the list in § 23 (B) of the 1973 Act, *supra*, lends credence to such overall purpose interpretation. The wording of this added purpose with our own emphasis and bracketed comments states: "(9) for such *other* purposes as specifically *authorized* [not required] by law, but not enumerated in this subsection [obviously subsection (B)]. Provided, that such deductions as are *authorized* [not required] by *this subsection* [(B)] shall be made in compliance with rules, regulations and procedures established by the Chief Fiscal Officer of the State."

As above set out, the State Comptroller, and later the Chief Fiscal Officer of the State, was given considerable latitude in devising rules and regulations for the actual disbursement of money appropriated for the various state agencies and departments by the Legislature, and it would appear that the 1973 Act charged the State Fiscal Officer with establishing rules, regulations and procedures for the payroll deductions he was authorized to permit.

The judgment is affirmed.

HARRIS, C.J., and BROWN and HOLT, JJ., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I cannot agree that the legislative provision here in question merely *permits* the Arkansas State Highway Commission (if so desired) to deduct union dues from the salaries and wages of members of appellant Employees Local 1315.

In my opinion, Section 23 (B) of Act 876 of the General Assembly of 1973 is mandatory. The provisions of that section include items that we all know to be mandatory, *viz.*, (1) withholding taxes; (2) Social Security contributions; (3) contributions to State Retirement System; the other authorized deductions certainly inure to the welfare of the employee, for

whose benefit, in my opinion, the act was passed. For instance, provisions No. 4 authorizes deductions for group hospital, medical and life insurance. Under the act, an employee can thus pay this important item on a semimonthly basis, a small amount at a time, without having to save for, or remember to send in quarterly, semiannual, or annual premiums. No. 5 authorizes deductions to State employee credit unions, and this is certainly a valuable benefit. There may be many employees who desire to borrow money but can offer no collateral to assure the repayment of the debt; the provision mentioned provides that collateral. This payroll deduction also affords a means for one to accumulate savings by adding small amounts each payday (about all that State employees can do with the present high cost of living) for the purchase of United States Government Savings Bonds. The examples, to me, clearly support my original premise, viz., that the act was passed for the benefit of the individual State employees, and was a mandate to the several State departments.[1]

Actually, since the deductions entail additional book work, and perhaps in some departments, even an extra employee, I seriously doubt that deductions would be made on a voluntary basis, i.e., simply because the department was permitted to do so. For that matter, appellees deducted union dues under the provisions of Section 23 (B) for about a year and a half before deciding that the provision was not compulsory.

Appellees cite the Federal case of *American Federation of Government Employees* v. *Hampton, et al*, 77 LRRM 2977, U. S. District Court, District of Columbia, which deals with 5 USCA § 7301, the section being entitled "Allotment of Dues". There, the court held that the statute was permissive rather than mandatory, but I should like to point out that there is a vast difference in the two statutes. 5 USCA § 7301 provides that "an agency *may* (my emphasis) deduct the regular and periodic dues of the organization from the pay of

---

[1] While I recognize that the testimony has no probative value, it is interesting to note that State Senator W. D. Moore, Jr., who sponsored the bill in the Senate, testified that in response to questions from the Senate floor during discussion of the measure, he informed the Senators that the provision here in controversy was discretionary on the part of the employee, *i.e.*, the employee had to make the written request — but the deduction was mandatory on the part of the employer (the State agency) once the request was made.

members of the organization in the unit of recognition who make a voluntary allotment for that purpose. Such an allotment is subject to the regulations of the Civil Service Commission, which shall include provision for the employee to revoke his authorization at stated six-month intervals." To the contrary, our statute provides:

> "Deductions from the payrolls of State employees, both regular and extra help, *shall be* (my emphasis) permitted only for the following purposes ***."

I agree with appellant's argument that the words "shall be" are mandatory, and require the various State agencies to implement the deductions requested by their respective employees. The words "permitted only", in my opinion, mean that the State agency can only make the payroll deductions for the particular classifications enumerated, *i.e.*, "permitted only" are simply words of restriction, which limit the type of payroll deductions, and prevent deductions from wages for other purposes not specifically mentioned.

It is my view that the statute imposes a clear legal duty on appellees to deduct the dues, and the petition for mandamus should have been granted.

I respectfully dissent.

BROWN and HOLT, JJ., join in this dissent.