The Honorable Paul R. Bosson Prosecuting Attorney 18th Judicial Circuit East 501 Ouachita Avenue Hot Springs, Arkansas 71901
Dear Mr. Bosson:
This is in response to your request for an opinion concerning the acquisition of electronic voting machines by Garland County. Specifically, you note that the Garland County Quorum Court has approved Ordinance 0-88-15 which provides in Sections 1 through 3 as follows:
 Section 1: The Quorum Court of Garland County hereby authorizes the acquisition and use of an electronic voting system to replace existing voting machines. In accordance with the provisions of Arkansas Code Annotated 7-5-501(e), this change shall not take place until such time as it is approved by the voters of Garland County.
 Section 2: In the event voters approve this change, the County Judge, an appropriate representative or representatives of the Quorum Court and the Garland County Election Commission shall study, recommend and prepare specifications for an electronic voting system. All applicable purchasing laws shall be complied with and any funds expended for such purchase shall be appropriated in the manner currently prescribed by Arkansas law.
 Section 3: It is the intent of this ordinance to authorize the use of an electronic voting system to replace the voting machines which are presently used by Garland County. In the event that the study reveals acquisition of electronic voting systems is not feasible, economically sound, or would work a financial hardship on the county, the Quorum Court shall not be bound by this vote to make an appropriation for the purpose of acquiring an electronic voting system.
You indicate that Section 2 above creates a problem in light of Kirkwood v. Carter, 252 Ark. 1124, 482 S.W.2d 608
(1972), in that, in your opinion, that case charges the County Board of Election Commissioners with the duty to initial and file a plan to purchase or lease-purchase a sufficient number of machines and recommend the particular machine needed. It is your feeling that once the Board has undertaken these duties and presented a plan for acquisition, its duties under the law have been discharged.
You next note that Ordinance 0-88-15 was referred to the electors and approved by them.
Additionally, you have attached a copy of Attorney General Opinion 74-45, issued by then Attorney General Jim Guy Tucker, which states that an appropriation is not required in order for the County Board of Election Commissioners to purchase voting machines. Your questions, relative to these above authorities are as follows:
 (1) May the County Board of Election Commissioners purchase voting machines without an appropriation ordinance for same?
 (2) Assuming your answer to (1) above is negative, are the duties of the board discharged after preparing specifications, obtaining bid and presenting a plan for acquisition to the Quorum Court?
 (3) Assuming your answer to (2) above is affirmative, may the next election be conducted using the old machines instead of electronic machines approved by the voters?
It is my opinion that the answer to your first question is "no", not only because, in my opinion, an appropriation is required, but also because the County Board of Election Commissioners is no longer specifically authorized by statute as the entity empowered to purchase the electronic voting machines. It appears that your reliance on Kirkwood, and Opinion No. 74-45 is misplaced because 1) both involve the acquisition of "voting machines" rather than "electronic voting machines", and 2) both involve the construction of a statutory provision which no longer exists.
The decision in Kirkwood, and Opinion No. 74-45 were both issued prior to Act 77 of 1977, which first authorized the acquisition of "electronic voting machines". That act has been substantially amended by Act 738 of 1979. The provision which the court in Kirkwood addressed, and the provision which is cited in Opinion No. 74-45, is former Ark. Stat. Ann. 3-1203 which provided in pertinent part as follows:
 The State Board of Election Commissioners or the County Board of Election Commissioners shall have the authority to purchase or lease-purchase voting machines and payment may be provided for in such manner as is deemed best for the interests of the State, County or City in which an affirmative vote is cast under the provisions of this section.
This provision, as substantially amended by Act 738 of 1979, is now codified at A.C.A. 7-5-501, which provides in subsection (a):
 (a) Voting machines authorized as set forth in this section and 7-5-604 and 7-5-605
[Electronic voting machines] may be acquired and used in any election conducted in a municipality or county upon the adoption of an ordinance therefore by the governing body of the municipality or the quorum court of the county.
Thus, the Board of Election Commissioners no longer has the specific statutory authority to purchase the machines. The purchase must now be authorized by ordinance. Additionally, subsection (e) of the same statute provides:
 (e) In municipalities or counties which acquired voting machines or electronic voting systems, or which voted to do so before April 6, 1979, nothing in this section and 7-5-604
and 7-5-605 or present laws shall prohibit such municipalities or counties from using any method or voting authorized by law, whether singly or in combination with any other authorized voting method. However, in any county or municipality in which the electors have voted for use of voting machines or electronic voting systems, the machines or systems used in the county or municipality shall not be changed unless the electors approve the change at a subsequent election. [Emphasis added.]
The statute referred to above, A.C.A. 7-5-605 is the provision which specifically authorizes the purchase of electronic voting machines. It provides as follows:
 (a) Electronic voting systems, authorized as set forth in this subchapter, may be acquired and used in any election conducted in a municipality or county upon the adoption of an ordinance by the governing body of the municipality or the quorum court of the county.
 (b) The costs of using electronic voting systems at all general and special elections, including costs of supplies, technical assistance, and transportation of the systems to and from polling places, shall be paid by the municipality or county in which the systems are used from the municipal or county general funds or such other source of public funds as may be available.
These statutes, when read together, allow the acquisition of electronic voting machines upon the adoption of an ordinance by the quorum court; but, if the electors of the county have voted on the question of using "voting machines", this practice cannot be changed without the voters approving the change at a subsequent election. (See Opinion No. 87-358, copy enclosed.) According to your correspondence, all of this has taken place.
The quorum court has adopted an ordinance, (No. 0-88-15) and the voters have authorized the change. Your questions now involve the actual acquisition of the machines. Your questions necessarily require resolution of two issues: 1) who is authorized to make the acquisition; and 2) must there be an appropriation for the purchase price? The statutes no longer grant specific authority to the County Board of Election Commissioners to acquire the electronic voting machines. The statutes do not specify who is to actually acquire the machines. They merely provide that they may be acquired upon the adoption of an ordinance and upon a vote of the electors (in some circumstances). Additionally, they do not provide whether the purchase price of the machines must be appropriated by the quorum court. A.C.A. 7-5-605 provides only that the cost of using the machines shall be paid from municipal or county general funds or such other source as may be available.
It is my opinion that granting authority to adopt the use of these machines "upon the adoption of an ordinance" implies that the quorum court itself is the entity authorized to acquire the machines. Thus, the answer to your first question in this respect is "no". The Board is not authorized to purchase the machines without an appropriation, because neither state law nor the local ordinance authorizes the Board to make the purchase.
The ordinance provides that should the electors approve the measure, the county judge, quorum court representatives, and the Board of Election Commissioners shall undertake a study of the use of the machines. The ordinance also states that funds expended to make the purchase shall be appropriated. Additionally, the ordinance provides that if the results of the study are unfavorable, the quorum court is not bound to make the appropriation. Thus no one is authorized to purchase the machines, under the ordinance, unless the measure is approved by the voters, and the study is favorable. If both of these contingencies occur, it is my opinion that the quorum court has the authority to make the purchase, unless it delegates this authority to the Board.
We must now determine whether the acquisition of the machines must be preceded by an appropriation. It is true that some expenses of local government do not require appropriations. It is said that an exception exists for that class of necessary obligations arising from county functions, imposed by law, (See Union County v. Union County Election Commission, 274 Ark. 286,623 S.W.2d 827 (1981), and Arkansas Constitution Art. 16,12), and that neither the county judge nor the quorum court has the discretion to decide whether money shall be provided for the holding of elections. It is my opinion, however, that the providing of "electronic voting machines" is not a necessary obligation of the county, imposed by law. The quorum court is given the discretion in the first instance of whether to authorize and acquire "electronic voting machines", and therefore the exception to the general appropriation requirement is not applicable. This being the case, A.C.A.14-20-106 requires an appropriation. Additionally, the ordinance itself requires an appropriation for the purchase.
It is thus my conclusion that the County Board of Election Commissioners is not authorized to purchase the electronic voting machines without an appropriation because 1) it is not the entity empowered to make the purchase; and 2) an appropriation is required under Arkansas law and the local ordinance.
In light of the conclusions above, resolution of your second and third questions is unnecessary. I will note, however, that the duties of the County Board of Election Commissioners entail those which are provided by law. It is noted above that the law no longer provides any specific duties with respect to the acquisition of electronic voting machines. Additionally, with regard to the use of the old machines following approval of the electronic machines, it is my opinion that this use is only permissible under circumstances effectively precluding, as a practical matter, use of the new machines. Otherwise, as previously noted, an election must approve the change.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
STEVE CLARK Attorney General
SC:arb
[1] You also note that the ballot only contained the ordinance title and not the entire ordinance, and that this fact leads to the conclusion that the voters approved only the use of electronic voting systems, and that "all other parts of the ordinance are surplusage." I must disagree with this conclusion. There is no general requirement that the entire referred ordinance be included on the ballot. The County Election Board places the title on the ballot. See, Arkansas Constitution, Amendment 7, and generally, A.C.A.14-14-905(f). We cannot conclude that the County Board acted improperly in this regard. Additionally, A.C.A.7-5-501 requires only that the voters approve the change to electronic voting machines. This they have done. Thus, the ordinance was properly referred to the voters and approved, and as a result, it must be concluded that all sections of the ordinance are operative.
[2] Additionally, Opinion No. 74-45 was premised on the assumption that federal revenue sharing funds would be available to fund the purchase.