# CHARLESTON.

FOX v. HARRIS, *Clerk,* and FOX v. PRICHARD, *Clerk.*

Submitted December 13, 1916.    Decided December 14, 1916.

1. CONSTITUTIONAL LAW—*Division of Powers—Powers of Judiciary.*

  Courts have no power to interfere with the proceedings of the legislature, or to regulate the official conduct of the clerks of the respective branches thereof, after its adjournment, in completing their journals, so long as they are obeying its rules and commands. (p. 422).

2. JURISDICTION OF COURTS.

  Jurisdiction to prevent the clerks of the respective houses of the legislature, after its adjournment, from falsifying the journals suggested, but not decided. (p. 423).

3. MANDAMUS—*Clerks of Legislature—Powers.*

  This court will not undertake by mandamus to compel the clerks of the respective houses of the legislature, in making up the journals of those bodies, after adjournment of the legislature, to expunge from the report of one of their joint conference committees on disagreeing votes in the two houses, on the passage of a certain bill, matter alleged to have been improperly and fraudulently incorporated therein, after the report had been adopted by the two houses, when it appears such matter was agreed on by said committee, but was inadvertently omitted from its report, by its clerk, and was afterwards inserted therein by the joint committee on enrolled bills, pursuant to a joint rule of the two houses, and the bill, as thus corrected, was called to the attention of the respective houses which adjourned *sine die,* without further action with reference thereto. (p. 423).

(RITZ, JUDGE, absent).

Original petitions by Fred L. Fox for writs of mandamus against John T. Harris, Clerk of Senate and Guy Prichard, Clerk of the House of Delegates.

*Writs denied.*

*W. E. R. Byrne* and *Thos. A. Bledsoe,* for petitioner.

*R. A. Blessing* and *J. L. Wolfe,* for respondent.

WILLIAMS, PRESIDENT:

  Suing as a citizen, resident and taxpayer of the county of Braxton, state of West Virginia, and as a member of the State

Senate, relator prays for writs of mandamus against John T. Harris, Clerk of the Senate, and Guy Prichard, Clerk of the House of Delegates, commanding them that, in making up the journals of the proceedings of the respective houses on the 28th of November, 1916, they "shall strike, omit and expunge from the report of the Committee on Conference on disagreeing votes of the Senate and House of Delegates on Senate Bill No. 1," the following matter, which the alternative writ alleges was falsely, fraudulently and unlawfully forged by pasting on and inserting in said conference report, by some person or persons to the relator unknown, as a part thereof and after said report had been adopted by a vote of the Senate, viz.:

"x on page 12 line 7 after word 'district' where it appears the second time insert the following:

"Provided, that in the year in which a President of the United States is to be elected, the county court of each county shall convene in regular or special session on the first Monday in May of such year, instead of the first Monday of the month preceding.

"On page 14, beginning with line 69, transpose all of subsection 2 of section 98-a-VII to line 1, page 12, making it sub-section 1."

In their returns respondents deny that this matter was forged or unlawfully inserted in the committee's report, and respondent John T. Harris avers the facts in relation thereto to be as follows:

"that on the 28th day of November, 1916, the Chairman on the part of the Senate of the Committee of Conference on the disagreeing votes of the two houses as to Senate Bill No. 1—known as the registration bill—submitted a report from said committee which was read by the Clerk and adopted by the Senate; that immediately thereafter the bill itself was taken up for further consideration and passed as amended by said report, and the action of the Senate was ordered to be communicated to the House of Delegates; that a communication from the House to the Senate announced that that body had adopted the report of the Committee of Conference and had passed the bill as amended by said report; whereupon

orders were given the Supervisor of Printing for the immediate enrollment of the bill; that after a copy of the bill as enrolled had been delivered by the printer, upon an examination of the same by members of the Committee of Conference, it was stated by them that there were omissions in the bill as printed, and they subsequently asked for and were handed the conference committee's report, which upon examination showed—as was claimed—that the omissions had occurred in the report itself; that the omitted matter had been inadvertently left out by the clerk of the committee; that said matter had been agreed upon by the committee, and not having been embodied in the report should be inserted therein; that it had been fully discussed in the committee and was understood by the members thereof; thereupon there was produced a memoranda of the said omitted matter, which was reduced to typewriting and embodied in the report of the conference committee; that said bill was then re-enrolled and turned over to the joint committee upon passed bills, otherwise known as the joint committee on enrolled bills, and the errors and omissions therein corrected according to the correction of said conference report, and the Chairman of the Senate Committee, comprising such joint committee on passed bills, otherwise known as the joint committee on enrolled bills, was signed by the President of the Senate and the Speaker of the House and reported to the Governor for his approbation by said committee and by the Governor duly signed; and that the Chairman of the Senate Committee, comprising such joint committee on passed bills, otherwise known as the joint committee on enrolled bills, reported to the Senate the action of said committee upon said bill, and that the same had been delivered to the Governor. And Respondent, as Clerk of the Senate of West Virginia at said time, denies any and all imputation of fraud, forgery or wrongdoing on his part, relative to said correction and says that he is advised as a matter of practice and law, that under the joint rules of the Senate and House of Delegates as adopted and in effect during said special session of said Legislature, said joint committee on passed bills, otherwise known as the joint committee on enrolled bills, had the right

and were empowered to correct any errors or omissions they might discover in said enrolled bill, as provided in Rule 2 of the joint rules of the Senate and House of Delegates. And respondent says that said enrolled bill as corrected and signed by said joint committee on passed bills, otherwise known as the joint committee on enrolled bills, and by the President of the Senate and the Speaker of the House, was approved by the Governor before the institution of this proceeding and had become a law.''

Respondent Harris admits that, on the re-assembling of the Senate after recess, on the 28th of November, 1916, relator did make inquiry, on the floor of the Senate, relative to the correcting of said conference committee's report and says the ''Chairman of the °conference committee on the part of the Senate arose and on the floor of the Senate explained said omission and the correction of said report complained of; that at that time there was considerable confusion in the Senate chamber, that body being in the process of adjournment.'' He also avers he was directed by the President of the Senate to incorporate in the journal of the proceedings of that day the report of the conference committee with the aforesaid omission supplied.

Respondent Prichard denies any knowledge respecting the directions that were given to John T. Harris, Clerk of the Senate, by its President, and denies that he, as Clerk of the House of Delegates, was ever directed to insert or incorporate in said Senate Bill No. 1 ''any forgery or alteration or amendment other than the amendment agreed to by said conference committee and adopted by the said House of Delegates,'' and avers he is acting in obedience to the will of the House of Delegates, and that it passed said Senate Bill No. 1 and adjourned *sine die*, before these proceedings were instituted.

Jurisdiction of the court to control the action of the clerks of the Senate and the House of Delegates in making up the journals of those bodies, as well as the right of a member of either of those bodies or of a private citizen to the relief sought, is questioned by demurrer and motion to quash the alternative writ. Being a co-ordinate branch of the state government, distinct from and independent of the judiciary,

it is unquestionably true that the legislature is not amenable
to the courts. They have no power to interfere in any man-
ner with the proceedings of either of its component branches,
or with the action of their respective clerks in making up the
journals of their proceedings, so long as they are acting in
obedience to the will of those bodies. This proposition is
self-evident, otherwise the judiciary would be superior to the
legislative branch of the government. We are speaking only
of the power of the courts relating to their interference with
legislative proceedings, and not of their long recognized,
and frequently exercised right and power to declare, in a
proper case, a legislative act unconstitutional, after it has
been passed. That question does not arise here. The con-
stitutionality of Senate Bill No. 1 is not and could not be
asserted in these proceedings. But we do not say the courts
are powerless to control the official conduct and actions of
the clerk of the respective branches of the legislature, after
its adjournment, if a case were clearly made out, showing
they were violating the command or the rules of those bodies
and were falsifying the records of their proceedings. The
fact that the journals of the legislature, after they are com-
pleted, become verities and can not be contradicted, would
seem to require that jurisdiction should exist in some tribunal
to prevent their falsification. Such jurisdiction, of course,
belongs to the legislature itself, so long as it is in session, but
after its adjournment, the courts would seem to be the only
proper tribunals to exercise it, in order to prevent the per-
petuation of a fraud upon the state. However, it is not nec-
essary to pass on the question of jurisdiction in such case,
until a case arises which demands a decision of that question.
In the present case the facts do not show that either of the
respondents is violating any rule or command of the branch
of the legislature of which he is the clerk. We may also as-
sume that, in such case, a member of the legislature, or a cit-
izen, who is a voter and taxpayer, has such interest as would
entitle him to maintain a proper proceeding in court to pre-
vent the fraud. But, for the purpose of this case, it is only
necessary to inquire whether or not respondents are acting
in obedience to the will of the legislature, respecting the

matter incorporated in Senate Bill No. 1, after the report of the joint committee thereon had been adopted by a vote of the Senate and of the House. The matter in question had been discussed in the meeting of the joint committee of the two houses, and had been agreed upon by it, but the clerk of said committee had inadvertently omitted the matter in making up the committee's report, and then, acting under its interpretation of joint rules No. 2 of the Senate and House of Delegates, the committee on enrolled bills incorporated the omitted matter into the enrolled bill. This all transpired on the 28th of November, 1916, at a special session of the legislature. After the reconvening of the Senate on that day, after it had recessed, the alleged fraudulent alteration in the report of the committee was called to the attention of that body, and a motion was made by one of its members, that permission be given the relator to place in the record a statement in reference thereto, and, by a vote of the Senate, the privilege was denied him, and shortly thereafter the Senate adjourned *sine die.* Having refused to expunge the matter, after its attention was called to it, the Senate consented, at least tacitly, to the action of the committee on enrolled bills in incorporating into Senate Bill No. 1 the matter in question.

So much of joint rule No. 2, adopted by the House and the Senate, and by which they were then being governed, as applies to the question involved, is as follows:

"The Joint Committee on Passed Bills, otherwise known as the Joint Committee on Enrolled Bills, shall consist of five members of the Senate and five members of the House of Delegates, to be appointed by the presiding officer of each house, whose duty it shall be to compare carefully all bills and joint resolutions passed by both houses, with the enrollment thereof, and to correct any errors or omissions they may discover and to make report to their respective houses each day of the correctly enrolled bills or joint resolutions." The enrollment of Senate Bill No. 1 with the omitted matter supplied, by the committee on passed bills, must therefore be regarded as having been done in accordance with the will of the Legislature and according to its interpretation of its own joint rule above quoted. It is the duty of respondents to obey the

will of the legislature, and, it appearing they are doing so, it would be assuming a power, which clearly does not belong to this court, to undertake to control their action in the prem: ises, and the writs are therefore denied.

*Writs denied.*