## Constitution Defense League v. Shannon et al.

*Graham C. Woodward*, for plaintiff.

*William A. Schnader*, attorney general, for defendants.

HARGEST, P. J., April 17, 1931.—The plaintiff filed its bill of complaint, seeking to enjoin the lieutenant governor, as president of the senate, and the president pro tempore of the senate, from the alleged violation of the Constitution in reference to the passage of bills. For the purpose of determining whether the court had jurisdiction we granted a rule to show cause why a preliminary injunction should not issue.

The bill of complaint avers that the plaintiff is a corporation and taxpayer of the Commonwealth of Pennsylvania and pays a tax into the general fund of the Commonwealth; that the president pro tempore of the senate signed Senate Bill No. 215, which was not read on three different days, and which bill was not signed by the president of the senate, and that the bill was not read in the presence of the senate immediately before signing, and that said bill has been transmitted to the governor; that certain other bills, identified by numbers in the bill of complaint, passed second reading, but were not read at length; that both the president and the president pro tempore of the senate signed other bills not identified by numbers in the bill of complaint which were not read or signed in the manner provided by the Constitution of Pennsylvania, and which have been transmitted to the house of representatives or to the governor where they have been received, passed and signed in the manner required by the Constitution; that plaintiff fears that the president and president pro tempore will hereafter sign "an alleged bill laying a tax on it in a manner not in accordance with sections 4 and 9 of article III of the Constitution," and that thereby "your orator may be compelled to pay said tax and be so deprived of its property without due process of law and sustain irreparable injury;" that plaintiff has been credibly informed that it is the intention of the president of the senate to continue to permit the president pro tempore to continue to sign bills which have not been read and will not be signed pursuant to sections four and nine of article three

of the Constitution; that unless restrained irreparable injury will be done it by reason of the breach of the provisions of the Constitution. The bill prays an injunction to restrain the president and the president pro tempore from signing any bill which has not been read at length on three different days, or signing any bill except in the presence of the senate after the title of said bill has been read immediately before signing.

The answer raises the preliminary question of law that the court is without jurisdiction and asks that the bill be dismissed.

## Discussion.

The plaintiff, both in the oral argument and in its brief, confesses that there is no reported case anywhere which involves the exact point and that "the case presents a doubt." That is the end of any right to a preliminary injunction. It needs no citation of authority for the proposition that a preliminary injunction should not issue where a doubt concerning the right to it exists.

1. The bill itself shows no right to an injunction of any kind. It avers that it is a taxpayer's bill. The plaintiff argues that "it is a bill quia timet, because we fear that we may be deprived of our property without due process of law."

Considered as a taxpayer's bill, no right to equitable relief is shown. Such a bill is properly brought against public officials to prevent the illegal expenditure of public funds or to prevent the incurring of illegal obligations requiring such expenditure. The bill in the instant case does not relate to the expenditure of public funds. There is no allegation of any specific pecuniary damage to the plaintiff.

The bill alleges that Senate Bill No. 215 was passed and signed by the presiding officer of the senate without observing section 4 of article III of the Constitution of Pennsylvania, which requires that "every bill shall be read at length on three different days in each house," and section 9 of article III, which provides that "the presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the general assembly after their titles have been publicly read immediately before signing." It avers that seven bills, specifically identified by numbers, and other bills not identified, passed second reading but were not read at length, but does not aver that the plaintiff is in any way injured or prejudiced by that conduct. These averments are followed by the averment of a fear that unless restrained the two presiding officers of the senate will sign some unidentified bill (which may not yet have been prepared) that might lay a tax on the plaintiff in some manner that is not in accordance with the Constitution, and that if such a bill, perchance, may be thus passed and thus signed, "your orator may be compelled to pay said tax and be so deprived of its property without due process of law and sustain irreparable injury." We think that no taxpayer's bill has ever been sustained anywhere to prevent such a phantasmagorical claim of irreparable injury. Nor has any quia timet bill ever been based upon such an imaginary fear. Quia timet bills deal with property rights, and "equity will not interfere for the purpose of declaring rights to prevent a possible controversy which has not yet arisen, or where no actual danger to the plaintiff's rights is shown:" 21 C. J. 130, Sec. 106.

2. The reading of bills in the course of their consideration is a legislative function. The signing of them by the presiding officer prior to their being certified to the other house or to the governor is likewise a legislative function. It is clearly settled that in our fundamental scheme of government the courts will not intervene to hinder or influence the progress of legislation in any of its steps, and the people must rely on the honesty of the members of the legislature

for the exercise of the powers conferred by the Constitution on the legislative department: 12 C. J. 883, Sec. 387; 7 R. C. L. 1049, Sec. 83; 18 R. C. L. 186, Sec. 109.

In Kilgore v. Magee, 85 Pa. 401, 412, it is said:

"In regard to the passage of the law and the alleged disregard of the forms of legislation required by the Constitution, we think the subject is not within the pale of judicial inquiry. So far as the duty and the conscience of the members of the legislature are involved, the law is mandatory. They are bound by their oaths to obey the constitutional mode of proceeding, and any intentional disregard is a breach of duty and a violation of their oaths. But when a law has been passed and approved and certified in due form, it is no part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of form in its passage. The presumption applies to the act of passing the law that applies generally to the proceedings of anybody whose sole duty is to deal with the subject. The presumption in favor of regularity is essential to the peace and order of the state.

"If every law could be contested in the courts on the ground of informality in its enactment, the floodgate of litigation would be opened so widely society would be deluged in the flow. . . . The evidence of a law—its actual existence— we may inquire into; for before we are bound by it we must be satisfied it is the act of the legislature, however informally they may have conducted the process by which they have made it a law."

See, also, Com. v. Alderman, 79 Pa. Superior Ct. 277, 279; Busser v. Snyder, 282 Pa. 440, 448; Massey v. Philadelphia, 1 W. N. C. 140.

In Fox v. Harris, 79 W. Va. 419, 91 S. E. 209, 210, a mandamus was sought to compel clerks of the legislative branches to make certain changes in the journals. The Supreme Court of that state said:

"Being a coördinate branch of the state government, distinct and independent from the judiciary, it is unquestionably true that the legislature is not amenable to the courts. They have no power to interfere in any manner with the proceedings of either of its component branches or with the action of their respective clerks in making up the journals of their proceedings, so long as they are acting in obedience to the will of those bodies. This proposition is self-evident, otherwise the judiciary would be superior to the legislative branch of the government."

If, as is conceded, the courts cannot inquire what the legislature did concerning a bill after it has been passed and approved, it should certainly follow that the courts should not inquire into what the legislature was doing or will do while in the act of passing a bill. Either of the latter inquiries would be more mischievous and subversive of our scheme of government than the former.

3. As we have already indicated, this bill is not a taxpayer's bill; it does not seek to redress a private wrong. The plaintiff, as its name indicates, is bringing this action pro bono publico, which private parties cannot do.

In Campbell v. Taggart, 2 W. N. C. 93, it is said:

"Private parties can invoke the chancery powers of the courts only for the redress of private injuries done or threatened. When equity intervenes to restrain acts prejudicial to the interests of the community, it must be by bill by the attorney general: Sparhawk v. Union Passenger Ry. Co., 54 Pa. 401."

If this bill may be regarded as seeking to preserve political rights, then again it is outside the jurisdiction of equity: U. S. Standard Voting Machine Co. v. Hobson, 132 Iowa 38, 109 N. W. 458; Bispham's Equity (9th ed.), section 37; 10 R. C. L. 342, Sec. 92.

598

4. Courts of equity in Pennsylvania have only the powers which the legislature has conferred upon them: Wilson v. Blaine, 262 Pa. 367; Hogsett v. Thompson, 258 Pa. 85, 91; Bridesburg Manufacturing Co.'s Appeal, 106 Pa. 275; Dohnert's Appeal, 64 Pa. 311, 313.

Under article v, section 20, of the Constitution, the courts of common pleas are given "such chancery powers as are now vested by law in the several courts of common pleas of this Commonwealth, or as may be hereafter conferred upon them by law." An examination of section thirteen of the Act of June 16, 1836, P. L. 784, 790, and of all subsequent statutes conferring equitable jurisdiction on the courts, discloses no jurisdiction such as is here attempted to be invoked. The contention of the plaintiff is that jurisdiction is given by the language of section thirteen of said article, viz.: "The prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals."

In Wilson v. Blaine, 262 Pa. 367, 370-72, this provision of section thirteen was invoked by a taxpayer to test the validity of a borough election for the purpose of obtaining assent to an increase of indebtedness. Mr. Justice Simpson discusses several phases of that contention in language applicable to the instant case, but which we will not repeat. He says, however, referring to the part of the statute above quoted:

"If those words were successfully given the broad construction often claimed for them by counsel, they would result in drawing into the jurisdiction of equity much of the civil and criminal litigation of the state, and would violate the provisions of section six, article nine of the Constitution of 1838, and section six of article one of the Constitution of 1873, providing that 'trial by jury shall be as heretofore, and the right thereof remain inviolate.' It is for that reason that the courts have invariably limited the act to matters within its purpose and spirit."

We have been asked to blaze a new trail in this case. This we decline to do. It would be such a devious byway, so far removed from the path that the law has trodden for many years that we have no justification for taking it.

For these reasons, we have heretofore entered the decree dismissing the bill of complaint.

From Homer L. Kreider, Harrisburg, Pa.