702 S.E.2d 611

STATE of West Virginia, ex rel. Darrell E. HOLMES, Clerk of the West Virginia Senate, and Gregory M. Gray, Clerk of the West Virginia House of Delegates, Petitioners,

v.

Honorable Russell M. CLAWGES, Jr., Judge of the Circuit Court of Monongalia County, and A.J.V., Respondents.

No. 35628.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 26, 2010.

Decided Oct. 27, 2010.

Ray E. Ratliff, Esq., Mark W. McOwen, Esq., Charleston, WV, Attorneys for the Petitioners.

John M. Hedges, Esq., Byrne Hedges & Lyons, Morgantown, WV, Attorney for Respondent A.J.V.

Darrell V. McGraw, Jr., Attorney General, Silas B. Taylor, Senior Deputy Attorney General, Charleston, WV, Attorneys for Amicus Curiae, Natalie E. Tennant, W.Va. Secretary of State.

KETCHUM, Justice:

The Clerk of the West Virginia Senate and the Clerk of the West Virginia House of Delegates petition this Court for a writ of prohibition to halt the enforcement against them of two orders by a circuit court. The circuit court ordered the Clerks to remove from the official journals of the Senate and the House of Delegates any mention of a particular pardon that had been granted by the Governor, and later communicated by the Governor to the Senate and the House of Delegates. When the Clerks refused to remove any mention of the pardon from the official journals, or to redact any part of the pardon from the version of the official journals that could be viewed on the Legislature's internet site, the circuit court entered an order compelling the Clerks to show cause why they should not be held in contempt.

After careful consideration, we conclude that the circuit court exceeded its authority. As set forth below, we grant the requested writ of prohibition.

I.

*Facts and Background*

In April 1994, A.V.[1]—then a student at West Virginia University—was arrested in Monongalia County at a fraternity party and charged with the misdemeanor offenses of public intoxication, brandishing, and carrying a concealed weapon. The latter two offenses involved a starter pistol that was incapable of firing a projectile. A.V. entered a guilty plea to the three charges, and paid the municipal court fines and costs that were assessed against him.

A.V. graduated from the University in 1998, and began a career in law enforcement. He currently works as a police officer. To minimize the impact of the 1994 convictions on his career advancement, A.V. sought a gubernatorial pardon.

On January 15, 2005, Governor Bob Wise granted A.V. a full and unconditional pardon for his three misdemeanor convictions. The *Constitution of West Virginia* requires a governor to report a pardon, the reasons for the pardon, and the salient facts underlying the offense being pardoned, to both houses of the West Virginia Legislature. Article VII, Section 11 of the *Constitution* states:

> The governor shall have power to remit fines and penalties in such cases and under such regulations as may be prescribed by law; to commute capital punishment and, except where the prosecution has been carried on by the House of Delegates to grant reprieves and pardons after conviction; but he shall communicate to the Legislature at each session the particulars of every case of fine or penalty remitted, or punishment commuted and of reprieve or pardon granted, with his reasons therefor.

On January 16, 2005, Governor Wise communicated his pardon in A.V.'s case (as well as numerous other cases) to the Senate and to the House of Delegates. On January 24, 2005, the President of the Senate reported the Governor's communication to the entire Senate, and a copy of the Governor's letter—which included the details surrounding A.V.'s arrest and conviction—was recorded in the *Journal of the Senate*. The same day, the Speaker of the House reported the Governor's actions to the House, and the Governor's letter was recorded in the *Journal of the House of Delegates*.

West Virginia law permits a person who has received a full and unconditional pardon to file a petition, in the circuit court in the county where the pardoned conviction was obtained, to have "the record of such conviction expunged." *W.Va.Code,* 5–1–16a(a) [2008].[2] The statute permits a circuit court to "enter an order directing that all public record of the petitioner's conviction be expunged." *Id.*

In 2008, A.V. filed a *pro se* petition in the Circuit Court of Monongalia County seeking to expunge records of his misdemeanor offenses from 14 years earlier. In an order dated June 18, 2008, the circuit court granted the petition and ordered that all government records pertaining to A.V.'s 1994 conviction were to be "expunged, meaning destroyed" and "the proceedings in this matter shall be deemed to never have occurred." All government agencies and officials with records relating to A.V.'s "arrest, charges or other matters arising out of the arrest or charges" were ordered to destroy their records, and to "reply to any inquiry that no record exists on the matter."

On June 26, 2008, A.V. mailed a copy of the expungement order to the two petitioners in this case, Darrell E. Holmes (in his capacity as the Clerk of the Senate) and Gregory M. Gray (in his capacity as the Clerk of the House of Delegates). A.V. advised the two Clerks that the pardon for his expunged offenses was recorded in the official *Journals*

---

1. In this case, we choose to follow our traditional practice in cases involving sensitive facts and use initials to identify the respondent rather than his full name. *See State ex rel. Garden State Newspapers, Inc. v. Hoke,* 205 W.Va. 611, 520 S.E.2d 186 (1999); *Benjamin v. Orkin Exterminating Company, Inc.,* 182 W.Va. 615, 390 S.E.2d 814 (1990).

 In this case, respondent A.V. was fully pardoned by the Governor for his youthful indiscretions, and he now wishes to limit the effect those indiscretions might have on his future employment. We choose to respect that wish.

2. The pertinent version of *W.Va.Code,* 5–1–16a took effect on June 6, 2008. As we discuss, *infra,* the Legislature amended the statute effective November 19, 2009 to clarify that records of the Governor, the Legislature and the Secretary of State which pertain to the granting of a pardon are not subject to an order of expungement.

of the Senate and the House. A.V. further advised them that the *Journals* could be electronically accessed on the internet, and the journal entries containing the Governor's pardon could easily be found by searching for A.V.'s name through several internet search engines. A.V. therefore asked that all of the entries in the *Journals* relating to his arrest, charges and subsequent pardon be destroyed.

The Clerks refused to alter the official *Journal* entries of either the Senate or the House to remove any record of A.V.'s pardon. So, at the request of A.V., the circuit court entered an amended expungement order on July 3, 2008 that expanded the types of records to be destroyed beyond those entries relating to the arrest and charges, and stated that all government agencies and officials with records relating to A.V.'s "arrest, charges, *pardon* or other matters arising out of the arrest, charges or *pardon*" were to destroy their records (emphasis added). The amended order also expanded the definition of the "records" to be destroyed to include "journal entries . . . whether documentary or electronic form, relating to the arrest, charges, pardon or other matters arising out of the arrest, charges or pardon." The circuit court required the clerk of the circuit court to serve a copy of the amended order on the Clerks of the Senate and the House.

In a letter to the circuit court dated August 28, 2008, the petitioner Clerks again expressed their refusal to alter the official *Journals,* largely because "the Clerk of each house is constitutionally required to maintain true and accurate records of the proceedings of the Legislature in journals of each house[.]" The Clerks cited various constitutional provisions and legislative rules to support their position.

Over a year later, in a letter dated October 8, 2009, an attorney retained by A.V. advised the Clerks that he intended to seek sanctions against them. The attorney stated that both he and A.V. had spoken to the Clerks and/or their staff on several occasions, and suggested that A.V. was no longer seeking to expunge his record from the printed versions of the *Journals.* Instead, A.V. said he only sought to expunge or redact his pardon rec-

ords from the copies of the *Journals* in an electronic form on the Legislature's internet web site. Because the Clerks would not even concede this conciliatory position, the attorney stated that he was going to proceed with a motion for contempt.

On December 8, 2009, the Clerks responded to A.V.'s attorney's contempt threats by mailing the attorney a copy of Senate Bill 4001. The bill, enacted by the Legislature on November 19, 2009 and made effective from passage, was signed by Governor Joe Manchin on December 7, 2009. The bill amended the expungement statute (*W.Va.Code,* 5-1-16a) to remove, from the definition of the types of records that may be expunged, those records pertaining to a pardon. The statute now says that while a circuit court may direct that any "public record" of a conviction be expunged:

> For the purposes of this section, "public record" or "record" does not include the records of the Governor, the Legislature or the Secretary of State that pertain to a grant of pardon. Such records that pertain to a grant of pardon are not subject to an order of expungement.

*W.Va.Code,* 5-1-16a(a) [2009].

A.V., by his counsel, subsequently filed a petition with the circuit court seeking contempt sanctions against the Clerks of the Senate and House of Delegates. In an order dated March 17, 2010, the circuit court ordered the Clerks "to show cause why they should not be held in contempt, with appropriate sanctions imposed, based upon their failure and refusal to comply with this Court's July 3, 2008 Order entered in this case."

On April 15, 2010, the Clerks of the Senate and the House of Delegates filed a petition with this Court for a writ of prohibition to stop the enforcement of the circuit court's March 17, 2010 show cause order, and July 3, 2008 amended expungement order.

## II.

### *Standard of Review*

█ "The writ of prohibition will issue only in clear cases where the inferior tribunal

is proceeding without, or in excess of, jurisdiction." Syllabus, *State ex rel. Vineyard v. O'Brien,* 100 W.Va. 163, 130 S.E. 111 (1925). *See also* Syllabus Point 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."); Syllabus Point 2, *State ex rel. Peacher v. Sencindiver* 160 W.Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va.Code 53–1–1.").

In Syllabus Point 4 of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996), we set forth the following standard for issuance of a writ of prohibition when it is alleged a lower court is exceeding its authority:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With this standard in mind, we address the Clerks' petition.

## III.

### Discussion

■ At the outset, we note that A.V. says that now he does not seek enforcement of the circuit court's expungement order with regard to the printed versions of the Legislature's *Journals.* Instead, he seeks only to expunge or redact the electronic form of the journal entries of his pardon that are easily available to the public through the Legislature's internet web site. He argues that "[i]n this Internet age with such highly effective search engines," the Clerks' refusal to remove information about A.V.'s conviction and pardon from the Legislature's web site "renders the expungement largely meaningless." *See* Pierre Bergeron and Kimberly Eberwine, *One Step in the Right Direction: Ohio's Framework for Sealing Criminal Records,* 36 U.Tol.L.Rev. 595, 597 [2005] ("If an individual seeking employment responds that she has never been convicted, but the employer decides to 'Google' her and finds a conviction, the individual sits in even a worse place—now she appears to be untruthful.")

Still, the Clerks argue that it is beyond the authority of a circuit court to compel them to alter the *Journals,* whether in their printed form or in their electronic form published on the internet. The Clerks generally assert that the circuit court exceeded its jurisdiction, because the *Journals* are a protected legislative function under the *Constitution of West Virginia.*

The *Constitution of West Virginia* vests the State's legislative power in a Senate and a House of Delegates. *W.Va. Const.,* Art. VI, § 1. Each house of the Legislature is charged with determining its own internal rules for its proceedings and with choosing its own officers. *W.Va. Const.,* Art. VI, § 24.

The *Constitution* mandates that each house must keep and publish a "journal of its proceedings." Article VI, Section 41 states:

Each house shall keep a journal of its proceedings, and cause the same to be published from time to time, and all bills and joint resolutions shall be described

therein, as well by their title as their number, and the yeas and nays on any question, if called for by one tenth of those present shall be entered on the journal.

A variation of this mandate has been in our *Constitution* since the founding of our State in 1863. The founding fathers indicated during the constitutional convention that there are two goals underlying this provision: to ensure that the votes of legislators are correctly recorded, and to make a public record of the actions of legislators. As the delegates to the convention stated:

> Mr. Pomeroy.... I think there are two objects in calling for the yeas and nays ... One is to get the correct vote of the body without any liability to mistake.... But the great object, I suppose, is that a man may be placed on the record and that it may go out to the world how he voted. I think this provision is wise. A captious individual in the legislature, thinking he was voting right and everybody else wrong might demand the yeas and nays and not get them; but if one-fifth of the body agree with him in the demand, the yeas and nays are called[.]

> Mr. Soper.... Indeed, I can conceive very well where a captious individual in a legislative body if he should be displeased and should want to gratify his spleen might demand to call the yeas and nays on almost every question—frivolous and unimportant question—where they never ought to have been called and much less ought to go on the journal....

II *Debates and Proceedings of the First Constitutional Convention of West Virginia* 8–13.

As required by the *Constitution,* both the Senate and the House of Delegates have adopted internal rules governing the proceedings of each house, including rules governing the creation of a journal recording those proceedings. Rule 49 of the *Senate Rules,* and Rules 17 and 128 to 132 of the *House Rules,* require the Clerks to keep and publish daily journals which (once they have been corrected and approved by the respective house) are to be bound and printed as the *Official Journal of the Senate of West Virginia* and the *Official Journal of the House of Delegates of West Virginia.*

Article VII, Section 11 of the *Constitution* requires the Governor to "communicate to the Legislature at each session the particulars of every case of ... pardon granted, with his reasons therefore." The internal rules of the Legislature require each house to give consideration to these gubernatorial communications. Rule 7 of the *Senate Rules* establishes the order of business in the Senate, and the third order of business requires the Senate to "dispose of communications from ... the Executive." Rule 65 of the *House Rules* establishes the order of business in the House of Delegates, and the fifth order of business requires the House "[t]o receive and consider messages from the Executive[.]"

Furthermore, the internal rules of the Legislature require that the Governor's communications be printed in the *Journal* of each house. Rule 20 of the *Joint Rules of the Senate and House of Delegates* provides:

> The following shall always be printed in the Journal of each house:

> (a) Messages from the Governor and messages from the other house, the titles of all bills and the title and text of all resolutions.

> (b) A record of all votes taken by yeas and nays as required by the Constitution, the rules of the respective houses and these rules; and a brief statement of the contents of each petition, memorial, or paper presented to each house.

> (c) A true and accurate account of the proceedings of each house.

To ensure that the *Journal* of each house is a "true and accurate account of the proceedings," the first order of business of both houses is "[t]o read, correct and approve the Journal." *Senate Rule 7, House Rule 65.*

The Clerks' primary argument is that the circuit court's orders violate the constitutional Separation of Powers doctrine, because the orders interfere with the internal proceedings of the Legislature and are an attempt to regulate the Legislature's constitutional duty to maintain accurate journals of their pro-

ceedings.[3] The Separation of Powers doctrine, found in Article V, Section 1 of the *Constitution*, states in part:

The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time[.]

A.V. concedes that state legislators, and sometimes legislative staff such as the Clerks, are afforded absolute constitutional immunity from judicial oversight for actions taken in the sphere of legitimate, discretionary legislative activity. A.V. argues, however, that reprinting a Governor's pardon report to the Legislature is not a core legislative function, and has no impact on the Legislature's deliberative or decision-making role. A.V. takes the position that the Clerks should not be constitutionally immune for reprinting the Governor's pardon report because it is merely a ministerial legislative function, and the circuit court's orders compelling the Clerks to expunge A.V.'s parole from the *Journals* have absolutely no effect on the constitutional operation of the Legislature.

 Under the Separation of Powers doctrine, "[t]he legislative, executive and judicial departments of the government must be kept separate and distinct, and each in its legitimate sphere must be protected." Sylla-

bus Point 1, *State ex rel. Miller v. Buchanan*, 24 W.Va. 362 (1884). "One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." *Union Pac. R. Co. v. U.S.*, 99 U.S. 700, 718, 25 L.Ed. 496 (1878). "Article V, section 1 of the Constitution of West Virginia which prohibits any one department of our state government from exercising the powers of the others, is not merely a suggestion; it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed." Syllabus Point 1, *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622 (1981).[4]

 It is a fundamental principle of constitutional law that under the Separation of Powers doctrine, courts have no authority—by mandamus, prohibition, contempt or otherwise—to interfere with the proceedings of either house of the Legislature. "The general principle is well settled that a court will not issue the writ of mandamus to compel a state legislature or an officer of such legislature to exercise their legislative functions or to perform duties involving the exercise of discretion." Annotation, *Mandamus to members or officer of legislature*, 136 A.L.R. 677 (1942).

 It is also a fundamental principle that under the Separation of Powers doctrine,

---

**3.** As a corollary argument, because the orders compel these Legislative officers to explain legislative activities, the Clerks assert that the circuit court's orders violated the constitutional Speech and Debate doctrine set forth in Article VI, Section 17 of the *Constitution*:

Members of the Legislature shall, in all cases except treason, felony, and breach of the peace, be privileged from arrest during the session, and for ten days before and after the same; and for words spoken in debate, or any report, motion or proposition made in either house, a member shall not be questioned in any other place.

Because we can base our decision on the Separation of Powers clause, we do not need to reach this argument.

**4.** *See also, State ex rel. Brotherton v. Blankenship*, 158 W.Va. 390, 402, 214 S.E.2d 467, 477 (1975) ("The system of 'checks and balances' provided for in American state and federal constitutions and secured to each branch of government by

'Separation of Powers' clauses theoretically and practically compels courts, when called upon, to thwart any unlawful actions of one branch of government which impair the constitutional responsibilities and functions of a coequal branch."); *Danielley v. City of Princeton*, 113 W.Va. 252, 255, 167 S.E. 620, 622 (1933) ("The legislative, executive and judicial powers, under the Constitution, are each in its own sphere of duty, independent of and exclusive of the other; so that, whenever a subject is committed to the discretion of the legislative or executive department, the lawful exercise of that discretion cannot be controlled by the judiciary."); and *State v. Huber*, 129 W.Va. 198, 209, 40 S.E.2d 11, 18 (1946) ("The separation of these powers; the independence of the one from the other; the requirement that one department shall not exercise or encroach upon the powers of the other two, is fundamental in our system of government, State and Federal. Each acts, and is intended to act, as a check upon the others, and thus a balanced system is maintained.")

courts have no authority to interfere with the actions of the Legislature's clerks in the keeping of legislative journals, so long as the clerks are acting in obedience to the will of those bodies. "Courts have no power to correct or change the journals. They will not entertain a suit to compel the clerk or Secretary of State to do so." 1 Sutherland *Statutes and Statutory Construction* § 15:12 (7th ed.2010).

A leading case adopting this principle—in both this State and nationally—is *Fox v. Harris*, 79 W.Va. 419, 91 S.E. 209 (1917). In *Fox*, a member of the Senate brought suit, against the Clerks of the Senate and the House of Delegates, seeking a writ of mandamus to compel the Clerks to "strike, omit and expunge" from the *Journals* a report that was allegedly forged. This Court refused to grant the writ because "[b]eing a co-ordinate branch of state government, distinct from and independent of the judiciary, it is unquestionably true that the legislature is not amenable to the courts." 79 W.Va. at 422–23, 91 S.E. at 210. The Court then concluded, in Syllabus Point 1, that:

Courts have no power to interfere with the proceedings of the legislature, or to regulate the official conduct of the clerks of the respective branches thereof, after its adjournment, in completing their journals, so long as they are obeying its rules and commands.[5]

After careful consideration, we reject A.V.'s contention that the Clerks' preparation of the official *Journals* of the Senate and House of Delegates is nothing more than a "ministerial" function subject to oversight by the courts. The compilation of the *Journals* by the Clerks is daily subjected to correction and approval by the members of each house. The contents of the *Journals* are governed by rules exclusively within the province of the Legislature. The Governor is constitutionally required to report pardons to the Legislature, and the Clerks of the Legislature are required by rule to include those gubernatorial reports in the *Journals*.

Moreover, the Legislature has deliberated and chosen to make those *Journals* available for review by the public by way of the internet.[6] To separate the printed *Journals* from

5. Other jurisdictions that have dealt with this question have similarly concluded that the courts have no power to alter the journals or records of a legislature. *See, e.g., Clough v. Curtis*, 134 U.S. 361, 10 S.Ct. 573, 33 L.Ed. 945 (1890) (There is no law to support the proposition that "the judiciary, by means of writs of mandamus operating upon the officers of legislative bodies, may supervise the making up of the records of the proceedings of those bodies, or cause alterations to be made in such records as are prepared by the officer whose duty it was to prepare them[.]"); *State ex rel. Daschbach v. Meyers*, 38 Wash.2d 330, 332, 229 P.2d 506, 507 (1951) (refusing writ of mandamus to alter legislative journal entry regarding the date of passage of a bill, stating "The legislature and this court are co-ordinate branches of our state government, and we cannot interfere with the legislature in its legislative processes, but are limited to a consideration of the constitutionality and interpretation of its acts."); *Heiskell v. Knox County*, 132 Tenn. 180, 177 S.W. 483, 485 (1915) ("[E]very reasonable presumption will be made in favor of the regularity and validity of the proceedings of the General Assembly as a co-ordinate branch of the government.... the recitals in the journals of the Legislature are conclusive. They are entitled to absolute verity, and cannot be impeached on the ground of mistake or fraud. If there are errors, the House itself is the only tribunal authorized to correct them."); *People ex rel. Manville v. Leddy*, 53 Colo. 109, 123–24, 123 P. 824, 830 (1912)

("The Senate kept a journal but did not enter therein the things required by the Constitution to make the act in question a valid law. This court cannot make such entry for the Senate. To do so would be legislation, ... If the courts can amend the legislative journals to-day, and insert therein something that was never there, to sustain a law, they have equal authority to amend them tomorrow, and strike therefrom something previously there, to overthrow a law."); *Yolo County v. Colgan*, 132 Cal. 265, 274, 64 P. 403, 407 (1901) (courts have no power "to correct the journals of the legislature, and declare that a bill certified by it to have been passed was not passed[.]"); and *State ex rel. Brickman v. Wilson*, 123 Ala. 259, 26 So. 482 (1899) (Court would not compel clerk of the house of representatives, or the secretary of state, to "erase and expunge" an allegedly "extraneous and false entry from the journal."). *See also, Norris v. Cross*, 25 Okla. 287, 313, 105 P. 1000, 1010 (1909) (the legislature has exclusive control and direction of the acts of subordinate officers of the legislature, and any dereliction of duty on their part can only be punished or corrected by the legislature itself. "In the control of such subordinate officer of either branch of the Legislature the courts cannot interfere.")

6. *W.Va.Code*, 4–3–5(b) [1999] authorized the Legislature to "consider providing free public access through the internet" to, among other things,

the version viewed on the internet by legal fiction would create an ambiguity or inconsistency between the two which would undermine the validity and utility of legislative records, and, as well, would render the status of A.V.'s prior convictions open to interpretation. We therefore believe, unless the Legislature chooses otherwise, that the printed *Journals* and the digital copy of the *Journals* on the internet must speak for themselves with a unified voice.

## IV.

### Conclusion

Under the Separation of Powers doctrine, a court cannot compel a member or officer of the Legislature to insert entries into, or remove entries from, the official journals documenting the proceedings of the Legislature, including those entries which pertain to the granting of a pardon. Accordingly, we find that the circuit court exceeded its authority when it ordered the Clerk of the Senate and the Clerk of the House of Delegates, on July 3, 2008, to expunge and destroy all "journal entries ... whether documentary or electronic form" relating to the arrest, charges and pardon of A.V. The circuit court also exceeded its authority when, on March 17, 2010, it ordered the Clerks to show cause why they should not be held in contempt for not complying with the July 3, 2008 order.[7]

Because the circuit court was plainly in error and exceeded its authority, a writ of prohibition is warranted.

Writ Granted.

"the daily journals of the House of Delegates and the Senate[.]"

7. The petitioners also argue that the Circuit Court of Monongalia County lacked venue because, statutorily, any suit in which a state officer is a party defendant may only be brought and prosecuted in the Circuit Court of Kanawha County. *See W.Va.Code*, 14–2–2 [1976]. Alternatively, the petitioners argue that they have been denied due process by not being named as parties in the action in Monongalia County, and because A.V. has essentially obtained the ex-

pungement orders he desired against the petitioners in an *ex parte* manner. Lastly, the petitioner Clerks contend that the circuit court's interpretation of the expungement statute, *W.Va. Code*, 5–1–16a [2009], was clearly erroneous. The petitioners argue that the statute plainly applies to allow records of A.V.'s *convictions*, and not his *pardon*, to be expunged. Because we are able to issue a writ of prohibition on other grounds, we decline to consider these three arguments.